500 So.2d 142 (1986)
GENERAL TELEPHONE COMPANY OF FLORIDA, Appellant,
v.
John R. MARKS, III, Gerald A. Gunter, Katie C. Nichols, Michael McK. Wilson, and Thomas Herndon, As and Constituting the Florida Public Service Commission, Appellees.
No. 68691.
Supreme Court of Florida.
December 30, 1986.
*143 James V. Carideo, Vice President-Gen. Counsel, and Thomas R. Parker, Associate Gen. Counsel, Tampa, for appellant.
William S. Bilenky, Gen. Counsel and Donald L. Crosby, Associate Gen. Counsel, for Florida Public Service Com'n.
Jack Shreve, Public Counsel, Charles J. Beck and Charles J. Rehwinkel, Associate Public Counsel, Office of the Public Counsel, Tallahassee, for the Citizens of the State of Florida.
BOYD, Justice.
General Telephone Company of Florida has filed this appeal from Order No. 15924 of the Public Service Commission which adopted Rule 25-4.405, Florida Administrative Code, concerning telephone directory advertising revenues. We have jurisdiction. Art. V., § 3(b)(2), Fla. Const.
Appellant contends that the commission acted beyond the limit of its statutory authority in enacting Rule 25-4.405. The rule was adopted pursuant to and for the purpose of implementing section 364.037, Florida Statutes (1985). Because we find that the rule is based on a reasonable construction of the statute, we conclude that the commission acted within its authority under section 364.037. Accordingly, we affirm Order No. 15924.
This case concerns the treatment, in the ratemaking process, of money earned by telephone companies from telephone directory advertising. Prior to the enactment of section 364.037,[1] all the expenses of producing and furnishing telephone directories, and all revenues earned from directory advertising, were included in the ratemaking process. In other words, the costs of furnishing directories was considered to be part of the expenses of providing telephone service and the money earned from advertising was considered to be part of the companies' revenue received from ratepayers. Thus advertising revenue served to subsidize the cost of providing basic telephone service to the customers. This practice was once challenged for want of legislative authority before this Court, but while the appeal was pending, the legislature enacted section 364.037, rendering the issue moot. Southern Bell Telephone & Telegraph Co. v. Florida Public Service Commission, 443 So.2d 92 (Fla. 1983).
The new legislation departs from the commission's earlier practice of including all telephone directory advertising revenues in the ratemaking procedure for the benefit of the consumer. Section 364.037 specifically authorizes the commission to "consider revenues derived from advertising in telephone directories when establishing rates for telecommunication services."[2] *144 However, it sets forth a detailed incentive-based formula on how the gross profits from all directory advertising shall be allocated between the regulated and nonregulated portions of a telephone company's operations. Simply stated, part of the advertising profit still goes into the ratemaking process for the benefit of the ratepayers, but part of it now goes to the company for the benefit of the shareholders. Thus, the amount of gross profit allocated to the regulated portion of the company's operation is used as a subsidy to offset local rate increases for the benefit of the consumer, and the amount allocated to the unregulated portion of the company's operation is retained by the company, increasing its value for the benefit of its shareholders. The formula is devised to require that a certain amount of gross profits be allocated to the consumers, while the excess amount is retained by the company. This provides an incentive to the telephone companies to maximize their profits from telephone directory advertising by either increasing revenues or decreasing expenses. By maximizing the profitability of directory advertising, the companies benefit both themselves and the ratepayers.
In response to this new legislation, the commission proposed the adoption of a rule to implement the new statute and instituted rulemaking proceedings. Subsection (2)(g) of the proposed rule provided: "Directory advertising revenues and expenses, as used in this rule, shall include revenue and expenses from both yellow page advertising, including national advertising, and any boldface or other highlighted white page listings for directories within the franchised area of the exchange telephone company." In subsection (3), the proposed rule estimated the amount of gross profit for each telephone company in 1982. In accordance with the statute, these calculations are used to determine the amount of such gross profit for subsequent years. In reaching these estimates, the commission deducted from the gross revenue the expenses of furnishing the ordinary directory of subscribers, commonly called the "white pages" as well as the expenses of producing the advertising portion of the directory, referred to as the "yellow pages."
Appellant General Telephone Company requested a hearing and challenged the commission's authority to include the white-pages expenses in calculating the profit derived from directory advertising. At the hearing appellant pointed out that neither the statute nor the rule specifically stated that ordinary directory expenses should be included in the calculations and claimed that section 364.037 prohibited the inclusion of white-page directory expenses in determining the amount of gross profit derived from directory advertising. A representative of General Telephone testified that his company was able to separate out the expenses associated with the white pages from the expenses associated with the yellow-pages advertisements.
The commission rejected this view and accepted its staff's recommendation to include white-page expenses in calculating the amount of gross profit received from directory advertising. To make it perfectly clear that the white-page expenses were to be included, subsection (2)(g) was redrafted to provide:
Directory advertising revenues, as used in this rule, shall include revenue from both yellow page advertising, including national advertising, and any boldface or *145 other highlighted white page listings for directories within the franchised area of the exchange telephone company. Directory advertising expenses, as used in this rule, shall include expenses incurred in furnishing directories.
We hold that the inclusion of this language in Rule 25-4.405 was within the commission's statutory authority. In rulemaking proceedings, the standard for review is whether the rule is reasonably related to the enabling legislation and is not arbitrary or capricious. General Telephone Co. v. Florida Public Service Commission, 446 So.2d 1063 (Fla. 1984). In this case the enabling legislation is section 364.037, which specifically authorizes the commission to allocate the gross profit from directory advertising to the regulated and nonregulated portions of a telephone company's operations. This authorization implies that the commission has the authority to decide how that gross profit is to be calculated. General Telephone argues that because section 364.037 does not specifically authorize the commission to include white-page expenses in calculating the gross profit, the commission may not do so. We do not agree. An administrative agency must have some discretion when a regulatory statute is in need of construction in its implementation. The lack of specific direction to include all directory expenses in calculating advertising profits does not preclude the commission's ruling as it did.
The legislature cannot be expected to foresee and make provision for every possible type of expense that might be associated with the gross profit of a particular type of operation. Some discretion must be given to regulatory bodies to promulgate the detailed rules that expand upon and implement legislative directives. In this case the legislature provided that the commission shall calculate gross profits. Unless there is something else directly contrary in the statute itself, we must assume the legislature intended to grant the commission the discretion to determine what factors should be used in calculating gross profits for telephone directory advertising.
The only express legislative directions to the commission in this respect are found in subsection (4) which provides:
(4) Any profit associated with providing directory advertising service outside the franchise area of a company may not be considered when determining gross profit derived from directory advertising for ratemaking purposes. Any investment or expenses associated with providing directory advertising service outside its franchise area may not be recovered through rates for telephone service.
This subsection does not say that the expenses of furnishing the white pages of the directories should be excluded.
Not only is there nothing in the statute itself expressly prohibiting the inclusion of white-pages expenses in calculating gross profits, there is language indicating that they should be included. Subsection (3) provides that an adjustment shall be made to the 1982 gross profit if "the expense to a company to furnish directories in 1982 exceeded 40 percent of the gross revenue." (Emphasis supplied.) This underscored language indicates that the legislature intended the expenses associated with furnishing the directories, not just the expenses associated with producing the yellow pages, should be included in calculating the gross profit from directory advertising.
With the exception of the language contained in these subsections, the legislature did not dictate how the commission should calculate gross profits from directory advertising. Since section 364.037 grants the commission specific authority to allocate gross profits made from directory advertising and there is no specific limitation on that authority to prohibit it from considering the expenses of furnishing the white pages of the directories, we hold that the commission has the statutory authority to promulgate Rule 25-4.405.
General Telephone also argues that the commission's interpretation of section 364.037 *146 is contrary to its legislative history. Since we have already decided that the statute, given its plain meaning, authorizes the commission to determine how gross profits are to be calculated, there is no further need of construction by reference to legislative history.
Finally, appellant argues that the commission's reasons for including white-page expenses were legally insufficient. One of the reasons given by the staff of the Public Service Commission for including the expenses for white pages was that many of the telephone companies printed the white pages and yellow pages together in one volume and that it would therefore be difficult to allocate the expenses associated with only the yellow pages. Another reason given was that the white pages themselves contained boldface or highlighted print for advertising purposes.
This evidence was not contradicted. Although appellant claimed that it could separate the revenues derived from boldface or highlighted print in the white pages and that it could separate the expenses for the white pages and yellow pages, it failed to present any evidence showing that the commission's method of determining gross profit was clearly erroneous. The fact that General Telephone offered a different method of calculating gross profit does not mean that the commission's method was unreasonable. Furthermore, General Telephone failed to show how the expenses associated with white pages containing boldface or highlighted print could be separated from expenses associated with white pages containing regular print. Since the commission has acted within its discretion, we will not substitute our judgment. Citizens of Florida v. Mayo, 357 So.2d 731 (Fla. 1978).
We therefore conclude that Rule 25-4.405 is reasonably related to section 364.037 and that it is not arbitrary or capricious. We therefore affirm.
It is so ordered.
McDONALD, C.J., and ADKINS, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
NOTES
[1] Ch. 83-73, Laws of Fla.
[2] Section 364.037, Florida Statutes (1985), provides as follows:

The commission shall consider revenues derived from advertising in telephone directories when establishing rates for telecommunication services. When establishing such rates, the gross profit from all directory advertising in the local franchise area of a telephone company shall be allocated between the regulated portion and the nonregulated portion of its operation as provided in this section.
(1) The gross profit derived from directory advertising to be included in the calculation of earnings for ratemaking purposes shall be the amount of gross profit derived from directory advertising during the year 1982 adjusted, for each subsequent year, by the Consumer Price Index published by the United States Department of Commerce and by customer growth or, if lesser, the amount of gross profit actually derived from directory advertising in the local franchise area for the year.
(2) The gross profit derived from directory advertising to be allocated to the nonregulated operation of a company shall be the gross profit which is in excess of the adjusted 1982 amount determined in accordance with subsection (1).
(3) For the purpose of this section, the amount of gross profit of a company from directory advertising for the year 1982 is the actual gross profit derived from such advertising for that year. If, however, the expense to a company to furnish directories in 1982 exceeded 40 percent of the gross revenue derived from its directory advertising, the 1982 level of gross profit shall be adjusted to reflect a cost of 40 percent of its 1982 gross revenue. This adjusted 1982 gross profit level shall be utilized in lieu of actual gross profit for 1982 when making the calculations in subsection (1).
(4) Any profit associated with providing directory advertising service outside the franchise area of a company may not be considered when determining gross profit derived from directory advertising for ratemaking purposes. Any investment or expenses associated with providing directory advertising service outside its franchise area may not be recovered through rates for telephone service.
(5) Notwithstanding any provision of this section to the contrary, no less than two-thirds of the total gross profit of a company from directory advertising within its local franchise area for any year shall be included in the regulated portion of its operation when establishing rates.