767 So.2d 428 (2000)
TAMPA ELECTRIC CO.; Florida Power Corp.; and Florida Power & Light Co., Appellants,
v.
Joe GARCIA, et al., as the Florida Public Service Commission; Utilities Commission, City of New Smyrna Beach; and Duke Energy New Smyrna Beach Power Co., Ltd., LLP., Appellees.
Nos. SC95444 to SC95446.
Supreme Court of Florida.
April 20, 2000.
Rehearing Denied September 28, 2000.
*429 Harry W. Long, Jr., pro hac vice, Tampa, Florida, and Lee L. Willis and James D. Beasley of Ausley & McMullen, Tallahassee, Florida, for Tampa Electric Company; Gary L. Sasso, Sylvia H. Walbolt, Robert Pass and Joseph H. Lang, Jr. of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, Florida, and James A. McGee and Jeff Froeschle, Senior Counsels, St. Petersburg, Florida, for Florida Power Corporation; Matthew M. Childs and Charles A. Guyton of Steel, Hector & Davis, Tallahassee, Florida, and Alvin B. Davis, Thomas R. Julin, Edward M. Mullins and Sandra K. Wolkov of Steel, Hector & Davis, Miami, Florida, for Florida Power and Light Company, Appellants.
Robert D. Vandiver, General Counsel and Richard C. Bellak, Associate General Counsel, Tallahassee, Florida, for the Florida Public Service Commission; Robert Scheffel Wright and John T. LaVia, III of Landers & Parsons, P.A., and Alan C. Sundberg, c/o Landers & Parsons, P.A., Tallahassee, and Steven G. Gey and Mark Seidenfeld, pro hac vice, Florida State University College of Law, Tallahassee, Florida, for Utilities Commission, City of New Smyrna Beach, Florida; Stephen H. Grimes, D. Bruce May, Karen D. Walker and Susan L. Kelsey of Holland & Knight, Tallahassee, Florida, Daniel S. Pearson of Holland & Knight, Miami, Florida, and Brent C. Bailey, pro se, Vice President and General Counsel, Houston, Texas, for Duke Energy New Smyrna Beach Power Co., Ltd., LLP; and Jon C. Moyle, Jr. and Robert J. Sniffen of Moyle, Flanigan, Katz, Kolins, Raymond & Sheehan, P.A., Tallahassee, Florida, for PG & E Generating (f/k/a/ U.S. Generating Company), Appellees.
Bill L. Bryant and Katherine E. Giddings of Katz, Kutter, Haigler, Alderman, Bryant & Yon, P.A., Tallahassee, Florida, for Enron North America ("Enron"), Amicus Curiae.
PER CURIAM.
These consolidated cases are before the Court on appeal from an order of the Public Service Commission (PSC or Commission). We have jurisdiction. Art. V, § 3(b)(2), Fla. Const. The issue presented concerns the statutory authority of the PSC to grant a determination of need under the Florida Electrical Power Plant Siting Act (Siting Act)[1] and the Florida Energy Efficiency & Conservation Act (FEECA)[2] for an electric power company's proposal to build and operate a merchant plant in Volusia County.[3] We reverse the order of the PSC for the reasons stated herein.
The construction of any new electrical power generating plant as defined by section 403.503(12), Florida Statutes, that is not otherwise exempted by Florida law, is required to be certified in accord with the various requirements of the Siting Act in chapter 403, Florida Statutes.[4] As part of the process, an applicant seeks a determination of need from the PSC for a proposed power plant. See § 403.519, Fla. Stat. (1997).[5] The PSC's granting of a *430 determination of need for a proposed power plant creates a presumption of public need. See § 403.519, Fla. Stat. (1997). This determination serves as the PSC's report required by section 403.507(2)(a)2, Florida Statutes (1997), as part of the permitting procedure.
On August 19, 1998, the Utilities Commission of the City of New Smyrna Beach (New Smyrna), and Duke Energy New Smyrna Beach Power Co., Ltd. (Duke) filed in the PSC a joint petition for determination of need for the New Smyrna Beach Power Project, a proposed natural gas fired combined cycle generating plant with 514 megawatts of net capacity to be built and operated by Duke in New Smyrna Beach. Duke is not presently subject to PSC regulation as a public utility authorized to generate and sell electric power at retail rates to Florida customers. Duke is a subsidiary of an investor-owned utility based in North Carolina. As a company offering electrical power for sale at wholesale rates, Duke is subject to the regulatory jurisdiction of the Federal Energy Regulatory Commission (FERC) and is classified as an exempt wholesale generator (EWG).[6] New Smyrna is a Florida municipal electric utility that directly serves retail customers.[7] In the present petition for determination of need, Duke proposed to build a 514-megawatt plant, with thirty megawatts of that capacity and associated energy committed to be sold to New Smyrna and the remaining megawatts uncommitted and intended to be made available for sale at competitive wholesale rates to utilities that directly serve retail customers.
Prior to filing the present joint petition, Duke and New Smyrna entered into an agreement requiring Duke to finance, design, build, own, and operate the plant and to sell to New Smyrna thirty megawatts of Duke's proposed plant's capacity at a discount wholesale rate. New Smyrna agreed to provide the site for the plant, a wastewater treatment facility, water, and tax reductions. New Smyrna intends to sell to its retail customers the energy it has committed to purchase from Duke. The agreement also provides that Duke will make available for sale the remaining 484 megawatts of power in the competitive wholesale electrical power market primarily, but not exclusively, for ultimate use in Florida.
The seven intervenors as to the petition included present appellants Tampa Electric Co. (Tampa Electric), Florida Power Corp. (FPC), and Florida Power & Light Co. (FP & L). After a hearing in December 1998, three members of the Commission voted to deny motions to dismiss by FPC and FP & L and voted to grant the joint petition. In re Joint Petition for Determination of Need, No. PSC-99-0535-FOF-EM (March 22, 1999) (Order). Commissioner Clark dissented, concluding that Duke was not a proper applicant. Commissioner Jacobs concurred and dissented, stating that he believed Duke was a proper applicant but that Duke had not proven its proposed plant to be the most cost-effective option.
*431 In this appeal, appellants are public utilities that are regulated and authorized by the PSC to generate and sell electrical power to users of the power in Florida. Appellants designate themselves as Florida retail utilities. Appellants contend that section 403.519, Florida Statutes, from its initial adoption in 1980 through subsequent legislative changes and up to the present date, does not authorize the PSC to grant a determination of need to an entity other than a Florida retail utility regulated by the PSC whose petition is based upon a specified demonstrated need of Florida retail utilities for serving Florida power customers.
Appellants point out that the recent national movement toward the construction of power plants intended to generate power to be sold in competitive wholesale markets stems from recent federal legislative initiatives. This movement began with the Public Utilities Regulatory Policies Act of 1978 (PURPA).[8] Subsequent relevant federal legislation includes the Energy Policy Act of 1992,[9] which exempts certain wholesale generators from some regulatory requirements. Another milestone is a FERC order issued in 1996 which affects power distribution.[10] Appellants note that these federal initiatives occurred subsequent to the Legislature's enactment of the Siting Act of 1973. Appellants also emphasize that the Legislature has not amended section 403.519 to authorize the PSC to grant a determination of need for a power plant in Florida that would generate power intended to be sold in the competitive wholesale market which is developing as a result of these federal legislative and regulatory changes.
Appellants contend that Duke is not an authorized applicant under section 403.519 because Duke is not a Florida retail utility. Appellants contend that joining with New Smyrna, which is a proper applicant, does not cure the fact that Duke is not a proper applicant in view of the commitment to New Smyrna of just thirty megawatts of the 514-megawatt capacity of the plant.[11] Appellants contend that the proposed plant is not authorized by section 403.519 because all but the thirty megawatts that New Smyrna has agreed to buy is uncommitted. Therefore, there is no demonstrated specific need committed to Florida customers who are intended to be served by this proposed plant.
In support of their position, appellants cite PSC orders in proceedings that led to this Court's decisions in Nassau Power Corp. v. Beard, 601 So.2d 1175 (Fla.1992) (Nassau I), and Nassau Power Corp. v. Deason, 641 So.2d 396 (Fla.1994) (Nassau II) (collectively, the Nassau cases).
In the proceedings below, the five members of the PSC were divided in their conclusions as to the decision to grant the determination of need. The three-member majority's rationale is presented by the PSC as an appellee in this Court. In the PSC order at issue here, the PSC majority finds that Duke and New Smyrna are proper applicants pursuant to the Siting *432 Act, FEECA, and the Florida Administrative Code. Order at 18-29. The majority construes section 403.519 as requiring, pursuant to section 403.503(4), Florida Statutes (1997), that an applicant may be any "electric utility." Id. at 19. Utilities are defined in section 403.503(13), Florida Statutes (1997), as "regulated electric companies." Id. The majority finds that Duke is a regulated electric company pursuant to federal regulatory statutes because the statutes do not expressly provide that "regulated electric companies" are to be state-regulated. Id. at 20. The majority finds that even though Duke is not a Florida retail utility, it is a regulated electric company subject to federal regulation and certain other Florida regulation. Id. at 19, 22-24. The majority also finds that a determination of need properly could be based upon the projected needs of utilities throughout peninsular Florida rather than committed megawatt needs of specific retail utilities. Id. at 53-54. The majority finds the Nassau cases not to be on point here because those cases concerned a wholly different issue. Id. at 29-32. In the Nassau cases, the PSC was asked to determine the need and standing of qualified facilities under PURPA, the federal law regulating cogenerators. The PSC points out that it specifically limited its decision to the facts of those qualified-facilities cases. Id. at 32.
In her dissenting opinion, Commissioner Clark construes the Siting Act and FEECA to mean that a proper applicant under section 403.519 is defined for purposes of FEECA, of which section 403.519 is a part, as "any person or entity of whatever form which provides electricity or natural gas at retail to the public." Order at 58 (quoting Ch. 80-65, § 5 at 214, Laws of Fla.) (alteration in original). She concludes that a utility's sale of electrical power must be a retail sale in order for that utility to be subject to PSC regulatory authority. Id. at 66. She notes that "wholesale sales are a matter within the sphere of federal regulation." Id. Commissioner Clark cites this Court's Nassau cases in support of her interpretation of the term "applicant" in section 403.519. Id. at 68. She finds those cases to be relevant in that this Court's rationale focused on the types of entities enumerated in section 403.503, Florida Statutes, and "concluded that the common denominator present in each was an obligation to serve customers." Id. at 68. Thus, "the need to be examined under section 403.519, Florida Statutes, was a need resulting from the duty to serve those customers." Id. Commissioner Clark concludes her dissenting opinion by stating:
Our task in this case was to decide what the law is, not what it ought to be. In my view, the law is clear that Duke New Smyrna is not a proper applicant under section 403.519, Florida Statutes, and the petition must be dismissed. We should, however, move forward with our workshop so that we can make recommendations to the Legislature as to what the law ought to be.
Order at 71. In his dissenting opinion, Commissioner Jacobs agrees with the majority that Duke is a proper applicant but finds that Duke and New Smyrna "failed to provide the weight of evidence required to depart from the Commission's long-standing policy of relying on its own cost effectiveness analysis of a proposed plant." Order at 74.
In this Court, Duke and New Smyrna, who are joint appellees with the PSC, argue that a need determination as part of the permitting process for the proposed Duke plant does fall within the parameters of section 403.519. They argue that the primary determinant as to Duke's applicant status is whether Duke is a regulated utility. The appellees maintain that Duke qualifies as a regulated utility because it is regulated under federal regulatory procedures, and if Duke receives permits to operate its proposed plant in Florida, the plant's operation will be regulated in part by the PSC. Duke and New Smyrna maintain that the Nassau cases were decided in *433 the context of need for power demonstrated by cogenerators and that those cases do not apply here. The appellees also rely upon the fact that Duke has filed a joint application with New Smyrna.
New Smyrna additionally presents two constitutional arguments and argues that prohibiting Duke from applying directly for a need determination would violate the dormant Commerce Clause of the United States Constitution because such action would unconstitutionally discriminate against out-of-state commerce and burden interstate commerce. New Smyrna also argues that any state requirement that Duke first obtain a contract with a retail utility to build the project is preempted by the federal Energy Policy Act of 1992, which mandates a robust competitive wholesale market.
We conclude that this case is resolved on the threshold legal issue of whether the PSC exceeded its statutory authority in granting the present determination of need. As we stated in United Telephone Co. of Florida v. Public Service Commission, 496 So.2d 116 (Fla.1986):
We note preliminarily that `orders of the Commission come before this Court clothed with the statutory presumption that they have been made within the Commission's jurisdiction and powers, and that they are reasonable and just and such as ought to have been made.' General Telephone Co. v. Carter, 115 So.2d 554, 556 (Fla.1959) (footnote omitted). See also Citizens v. Public Service Commission, 448 So.2d 1024, 1026 (Fla. 1984).
Such deference, however, cannot be accorded when the commission exceeds its authority. At the threshold, we must establish the grant of legislative authority to act since the commission derives its power solely from the legislature. See Florida Bridge Co. v. Bevis, 363 So.2d 799, 802 (Fla.1978). As we said in Radio Telephone Communications, Inc. v. Southeastern Telephone Co., 170 So.2d 577, 582 (Fla.196[4]):
[O]f course, the orders of the Florida Commission come to this court with a presumption of regularity, Sec. 364.20, Fla. Stat., F.S.A. But we cannot apply such presumption to support the exercise of jurisdiction where none has been granted by the Legislature. If there is a reasonable doubt as to the lawful existence of a particular power that is being exercised, the further exercise of the power should be arrested.
496 So.2d at 118.
The precise question we consider here is:
Does section 403.519, Florida Statutes, authorize the granting of a determination of need upon an application for a proposed power plant for which the owner and operator is not a Florida retail utility regulated by the PSC and for which only thirty megawatts of the plant's 514-megawatt capacity have been committed by contract to be sold to a Florida retail utility regulated by the PSC?
While we recognize that the PSC is correct in pointing out that the Nassau cases were decided upon different facts and were intended to resolve different issues, we conclude that our analysis of the Siting Act, articulated in those decisions, is applicable to the present case. In Nassau II, we stated:
In Nassau Power Corp. v. Beard, 601 So.2d 1175, 1176-77 (Fla.1992), we recently explained:
The Siting Act was passed by the legislature in 1973 for the purpose of minimizing the adverse impact of power plants on the environment. See § 403.502, Fla. Stat. (1989). That Act establishes a site certification process that requires the PSC to determine the need for any proposed power plants, including cogenerators, based on the criteria set forth in section 403.519, Florida Statutes (1989). Section 403.519 requires the PSC to make *434 specific findings for each electric generating facility proposed in Florida, as to (1) electric system reliability and integrity, (2) the need to provide adequate electricity at a reasonable cost; (3) whether the proposed facility is the most cost-effective alternative available for supplying electricity; and (4) conservation measures reasonably available to mitigate the need for the plant.
(Footnote omitted)....
. . . .
Only an "applicant" can request a determination of need under section 403.519. Section 403.503(4), Florida Statutes (1991), defines the term "applicant" as "any electric utility which applies for certification pursuant to the provisions of this act." An "electric utility," as used in the Act,
means cities and towns, counties, public utility districts, regulated electric companies, electric cooperatives, and joint operating agencies, or combinations thereof, engaged in, or authorized to engage in, the business of generating, transmitting, or distributing electric energy.
Sec. 403.503(13), Fla. Stat. (1991). The Commission determined that because non-utility generators are not included in this definition, Nassau is not a proper applicant under section 403.519. The Commission reasoned that a need determination proceeding is designed to examine the need resulting from an electric utility's duty to serve customers. Non-utility generators, such as Nassau, have no similar need because they are not required to serve customers.
The Commission's interpretation of section 403.519 also comports with this Court's decision in Nassau Power Corp. v. Beard. In that decision, we rejected Nassau's argument that "the Siting Act does not require the PSC to determine need on a utility-specific basis." 601 So.2d at 1178 n. 9. Rather, we agreed with the Commission that the need to be determined under section 403.519 is "the need of the entity ultimately consuming the power," in this case FPL. Id.

641 So.2d at 397, 398-99 (footnote omitted). Based upon our Nassau analysis of the Siting Act, we conclude that the granting of the determination of need on the basis of the present application does exceed the PSC's present authority. A determination of need is presently available only to an applicant that has demonstrated that a utility or utilities serving retail customers has specific committed need for all of the electrical power to be generated at a proposed plant.
Our decision is founded upon our continuing recognition that the regulation of the generation and sale of power in Florida resides in the legislative branch of government.[12] The PSC, successor to the Florida Railroad and Public Utilities Commission, is an arm of the legislative branch in that the Commission obtains all of its authority from legislation.[13] Originally, the Legislature did not include among the PSC's responsibilities the authority to approve the siting of new power plants but left such authority to local government entities. In 1973, the Legislature enacted the Florida Electrical Power Plant Siting Act,[14] to preempt local government action and to consolidate approval of most state agencies into a single license. Within that law was a requirement that each utility submit a ten-year site plan estimating the utility's power generating needs and the *435 general location of its power plants.[15] In enacting the Siting Act, the Legislature recognized a need for statewide perspective in selecting sites for power plants because of the "significant impact upon the welfare of the population, the location and growth of industry and the use of the natural resources of the state." See Ch. 73-33, § 1 at 73, Laws of Fla. At that time, the role of the PSC was to prepare a "report and recommendation as to the present and future needs for electrical generating capacity in the area to be served by the proposed site." Id. at 77.
In 1980, as part of the Florida Energy Efficiency and Conservation Act (FEECA), the Legislature changed the PSC's requirement of a "report and recommendation" to "a proceeding to determine the need for an electrical power plant subject to the Florida Electrical Power Plant Siting Act." Ch. 80-65, § 5, at 214, Laws of Fla. (codified at section 366.86, Fla. Stat. (1981)). By this statutory revision, the PSC was directed to review the regulated utilities' proposed new plants, taking into account the need for system reliability and integrity, the need for adequate reasonable-cost electricity and whether a proposed plant was the most cost-effective alternative available. See Ch. 80-65, § 5 at 217, Laws of Fla. The need determination provision at issue in this case was originally codified at section 366.86, Florida Statutes (1981), which was part of FEECA. The same provision is now at section 403.519 but continues to be listed within FEECA, even though it is codified immediately following the Siting Act.
The term "utility" was expressly defined for purposes of FEECA, including section 403.519, as "any person or entity of whatever form which provides electricity or natural gas at retail to the public." Ch. 80-65, § 5 at 214, Laws of Fla. Section 366.82(1), Florida Statutes (1997), provides: "For the purposes of ss. 366.80-366.85 [FEECA], and 403.519, `utility' means any person or entity of whatever form which provides electricity or natural gas at retail to the public." In 1990, statutory revisions included an amendment that changed the term "utility" to "applicant" in the first sentence of section 403.519.[16]
Our reading of this statutory history leads us to continue to conclude that the present statutory scheme was intended to place the PSC's determination of need within the regulatory framework allowing Florida regulated utilities to propose new power plants to provide electrical service to their Florida customers at retail rates. This need determination, pursuant to section 403.519, contemplates the PSC's express consideration of the statutory factors based upon demonstrated specified needs of these Florida customers. The need determination is part of the process that the Legislature intended by its plain language to balance "the pressing need for increased power generation facilities" with the necessity that the state
ensure through available and reasonable methods that the location and operation of electrical power plants will produce minimal adverse effects on human health, the environment, the ecology of the land and its wildlife, and the ecology of state waters and their aquatic life.
§ 403.502, Fla. Stat. (1997).
Accordingly, we find that the statutory scheme embodied in the Siting Act and FEECA was not intended to authorize the determination of need for a proposed power plant output that is not fully committed to use by Florida customers who purchase electrical power at retail rates. Rather, we find that the Legislature must enact express statutory criteria if it intends such authority for the PSC. Pursuant only to such legislative action will the PSC be authorized to consider the advent of the competitive market in wholesale power promoted by recent federal initiatives. *436 Such statutory criteria are necessary if the Florida regulatory procedures are intended to cover this evolution in the electric power industry.[17] The projected need of unspecified utilities throughout peninsular Florida is not among the authorized statutory criteria for determining whether to grant a determination of need pursuant to section 403.519, Florida Statutes. Moreover, we agree with appellants that the fact of Duke's joining with New Smyrna in this arrangement for a thirty-megawatt commitment does not transform the application into one that complies with the Siting Act and FEECA.
We find no merit in the constitutional arguments advanced by New Smyrna. As to any alleged preemption or interference with interstate commerce, we find that power-plant siting and need determination are areas that Congress has expressly left to the states.[18]
Accordingly, we reverse the order of the PSC on the basis that the granting of the determination of need exceeds the PSC's authority pursuant to section 403.519, Florida Statutes (1997).
It is so ordered.
HARDING, C.J., and SHAW, WELLS, PARIENTE, LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., dissents with an opinion.
ANSTEAD, J., dissenting.
I cannot concur in the majority's conclusion that the Florida Legislature has clearly prohibited the proposed action of the Commission. Indeed, it appears to me that the prohibition is based upon a strained and artificial construction of various provisions of the legislative scheme that have little bearing on the issue before us today. In fact, even under the strained construction of the majority the issue would be not whether the petitioning utilities were proper applicants, but whether the capacity required should be permitted.
I am especially concerned with the majority's conclusion that it will not find Commission authority to act absent "express statutory criteria" for the specific circumstances presented here. Clearly, the Commission was created to regulate utilities seeking to operate in Florida. In my view that is precisely what the Commission is doing here.
NOTES
[1] §§ 403.501-403.518, Fla. Stat. (1997).
[2] §§ 366.80-.85, 403.519, Fla. Stat. (1997).
[3] The PSC defines "merchant plant" as a power plant with no rate base and no captive retail customers.
[4] Section 403.506, Florida Statutes (1997), provides in relevant part:

(1) The provisions of this act shall apply to any electrical power plant as defined herein, except that provisions of this act shall not apply to any electrical power plant or steam generating plant of less than 75 megawatts in capacity or to any substation to be constructed as part of an associated transmission line unless the applicant has elected to apply for certification of such plant or substation under this act.
[5] Section 403.519, Florida Statutes (1997), provides in relevant part:

On request by an applicant or on its own motion, the commission shall begin a proceeding to determine the need for an electrical power plant subject to the Florida Electrical Power Plant Siting Act.... The commission shall be the sole forum for the determination of this matter, which accordingly shall not be raised in any other forum or in the review of proceedings in such other forum. In making its determination, the commission shall take into account the need for electric system reliability and integrity, the need for adequate electricity at a reasonable cost, and whether the proposed plant is the most cost-effective alternative available. The commission shall also expressly consider the conservation measures taken by or reasonably available to the applicant or its members which might mitigate the need for the proposed plant and other matters within its jurisdiction which it deems relevant.
[6] See 15 U.S.C. § 79z-5a (1994).
[7] New Smyrna is regulated by the PSC pursuant to section 366.04(2), Florida Statutes (1997).
[8] Pub.L. No. 95-617, 92 Stat. 3117 (1978) (codified as amended at 16 U.S.C. §§ 2601-2645 (1994)). See also Jeffrey D. Watkiss & Douglas W. Smith, The Energy Policy Act of 1992-A Watershed for Competition in the Wholesale Power Market, 10 Yale J. on Reg. 447 (1993).
[9] Pub.L. 102-486, 106 Stat. 2776 (1992) (amending the Federal Power Act, codified at 16 U.S.C. §§ 791a-825u (1994)).
[10] Promoting Wholesale Competition Through Open Access Non-Discriminatory Transmission Services by Public Utilities; Recovery of Stranded Costs by Public Utilities and Transmitting Utilities, Order No. 888, 61 Fed.Reg. 21,540 (1996), [Regs. Preambles Jan. 1991-June 1996] F.E.R.C. Stats. and Regs. 31,036, clarified, 76 F.E.R.C. 61,009 & 76 F.E.R.C. 61,347 (1996) (known as Order 888).
[11] New Smyrna's committed power purchase could be satisfied by a power plant that is exempt from obtaining a determination of need because a plant with a capacity of less than seventy-five megawatts is exempt from the need determination requirement. § 403.506, Fla. Stat. (1997).
[12] We find the historical context offered by Commissioner Clark in her dissenting opinion to be helpful. Order at 64-71. The record also contains a relevant discussion by FPC counsel Gary L. Sasso before the PSC in proceedings below. Record on Appeal, Vol. I of Hearing Transcript at 21-50.
[13] § 350.001, Fla. Stat. (1997).
[14] Ch. 73-33, § 1 at 73, Laws of Fla.
[15] Ch.73-33, § 1 at 76 (codified at § 403.505, Fla. Stat. (Supp.1974)).
[16] Ch. 90-331, § 24, at 2698, Laws of Fla.
[17] Our conclusion is consistent with the conclusion of the North Carolina Utilities Commission, which dismissed a similar petition by an independent power producer that proposed a merchant plant in North Carolina that was opposed by Duke Power Company. The Commission's order was affirmed. Empire Power Co. v. Duke Power Co., 112 N.C.App. 643, 437 S.E.2d 540 (Ct.App.1993).
[18] The Energy Policy Act of 1992, Pub.L. 102-486, Title VIII, Subtitle C, State and Local Authorities, section 731, provides:

Nothing in this title or in any amendment made by this title shall be construed as affecting or intending to affect, or in any way to interfere with, the authority of any State or local government relating to environmental protection or the siting of facilities.