841 So.2d 447 (2003)
LEVEL 3 COMMUNICATIONS, LLC, Appellant,
v.
E. Leon JACOBS, Jr., et al., Appellees.
No. SC01-2050.
Supreme Court of Florida.
March 6, 2003.
*448 Kenneth A. Hoffman and Martin P. McDonnell of Rutledge, Ecenia, Purnell & Hoffman, P.A., Tallahassee, FL; and Michael R. Romano and Greg L. Rogers of Level 3 Communications, LLC, Broomfield, CO, for Appellant.
Harold McLean, General Counsel and Martha Carter Brown, Associate General Counsel of the Florida Public Service Commission, Tallahassee, FL, for Appellee.
QUINCE, J.
We have on appeal a decision of the Florida Public Service Commission concerning regulatory assessment fees on the gross operating revenues of Level 3 Communications, LLC. We have jurisdiction. See art. V, § 3(b)(2), Fla. Const. We affirm the decision of the Public Service *449 Commission for the reasons expressed below.

BACKGROUND
On May 1, 2001, Level 3 Communications, LLC (Level 3),[1] pursuant to section 120.565, Florida Statutes (2001), and rule 28-105.002, Florida Administrative Code, filed a petition for declaratory statement requesting a determination from the Florida Public Service Commission (PSC) concerning items to be included in gross operating revenues from intrastate commerce. Level 3 maintained that its collocation[2] revenues should not be included as "gross operating revenues derived from intrastate business" as contemplated by rule 25-4.0161, Florida Administrative Code, and sections 350.113(3)(b) and 364.336, Florida Statutes (2001), for purposes of calculating the regulatory assessment fee for calendar year 1999. Level 3 filed its petition for a declaratory statement after the PSC audited Level 3's 1999 regulatory assessment filing fee and concluded that the company should include revenues from collocation in 1999 in the amount of $381,342, as part of its gross operating revenues derived from intrastate business to calculate the regulatory assessment fee due. Level 3 asked the PSC to declare that the revenue an ALEC generates from collocation should be excluded from the fee calculation.
In its petition, Level 3 argued that collocation revenues were lease payments made by new ALECs for occupying space in Level 3's "gateway" facilities,[3] so collocation should be considered as a "simple real property transaction." Level 3 further argued that because collocation does not involve the provision of telecommunication services, it should not be included as part of the company's gross operating revenues. In support of its position, Level 3 cited to the declaratory statement issued by the PSC in order no. PSC-01-0097-DS-TL (Verizon order). There, the PSC determined that Verizon was required to pay regulatory assessment fees on directory publishing revenues. Level 3 contended that the Verizon order "makes it clear that Sections 350.1113(3)(b) and 364.336, Florida Statues, were never intended to impose *450 a regulatory assessment fee on the revenues of a regulated telecommunications company that are not derived from a required component of that telecommunications company's communications service." According to Level 3, the PSC's position would subject optional, nontelecommunications services and revenues such as collocation or the sale of customer premises equipment to the regulatory assessment fee. Level 3 argued that because collocation is neither a telecommunications service nor a service required in conjunction with the provision of a telecommunications service, its collocation revenues should be excluded from its gross operating revenues for regulatory fee calculations.
The PSC disagreed, finding that Level 3 was required to include revenues derived from collocation in its regulatory assessment fee calculation. The PSC found that Level 3's collocation revenues were gross operating revenues derived from intrastate commerce, and the regulatory fee statutes did not contemplate the exclusion of those revenues from the fee calculation. The PSC reasoned that the statutes only permitted two specific exclusions from gross operating revenues for regulatory assessment fee purposes: (1) interstate revenues, and (2) a deduction for amounts paid to other telecommunications companies for the use of the facilities. The PSC noted that the regulatory statutes "do not tie the fees to services of any particular kind at all, but to a regulated company's `intrastate business,' a term that is clearly more inclusive than what Level 3 proposes." Since Level 3's collocation revenues did not fall under the specific exclusions, the PSC found that the revenues should be included

ANALYSIS
An agency's interpretation of the statute that it is charged with enforcing is entitled to great deference. See BellSouth Telecommunications, Inc. v. Johnson, 708 So.2d 594, 596 (Fla.1998). This Court will not depart from the contemporaneous construction of a statute by a state agency charged with its enforcement unless the construction is "clearly unauthorized or erroneous." See P.W. Ventures, Inc. v. Nichols, 533 So.2d 281, 283 (Fla.1988). The party seeking to challenge the PSC's order has the burden of overcoming these presumptions "by showing departure from the essential requirements of law." Florida Interexchange Carriers Ass'n. v. Clark, 678 So.2d 1267, 1270 (Fla.1996). However, this Court will not give deference to an agency's determination when the agency exceeds its authority. See Tampa Elec. Co. v. Garcia, 767 So.2d 428, 433 (Fla. 2000). Thus, unless this Court finds that the PSC acted outside the scope of its powers and jurisdiction by imposing regulatory assessment fees on Level 3's collocation revenues or its decision was "clearly unauthorized or erroneous," the PSC's decision will be afforded deference.
At issue is whether the PSC has the authority to collect regulatory assessment fees on the collocation revenues of Level 3. The PSC has exclusive jurisdiction to regulate telecommunications of Florida. See § 364.01, Fla. Stat. (2001); Florida Interexchange Carriers Ass'n v. Beard, 624 So.2d 248, 251 (Fla.1993). Sections 350.113 and 364.336, Florida Statutes (2001), establish the formula by which the PSC calculates its costs and collects fees needed to cover those costs from telecommunications companies. Section 350.113 creates the Florida Public Service Regulatory Trust Fund and provides the formula for the calculation of the PSC's regulatory costs and the maximum fee rate that the PSC can assess. The statute provides in relevant part:

*451 (1) There is hereby created in the State Treasury a special fund to be designated as the "Florida Public Service Regulatory Trust Fund" which shall be used in the operation of the commission in the performance of the various functions and duties required of it by law.
. . . .
(3) Each regulated company under the jurisdiction of the commission, which company was in operation for the preceding 6-month period, shall pay to the commission within 30 days following the end of each 6-month period, commencing June 30, 1977, a fee based upon the gross operating revenues for such period subject to the limitations of this subsection. The fees shall, to the extent practicable, be related to the cost of regulating such type of regulated company and shall in no event be greater than:
. . . .
(b) For each telephone company licensed or operating under chapter 364, one-eighth of 1 percent of its gross operating revenues derived from intrastate business.
. . . .
Differences, if any, between the amount paid in any 6-month period and the amount actually determined by the commission to be due shall, upon notification by the commission, be immediately paid or refunded. Each regulated company which is subject to the jurisdiction of the commission, but which did not operate under the commission's jurisdiction during the entire preceding 6-month period, shall, within 30 days after the close of the first 6-month period during which it commenced operations under, or became subject to, the jurisdiction of the commission, pay to the commission the prescribed fee based upon its gross operating revenues derived from intrastate business during those months or parts of months in which the regulated company did operate during such 6-month period. In no event shall payments under this section be less than $25 annually.
§ 350.113(1), (3), Fla. Stat. (2001).
Section 364.336 provides the fee rate for telecommunications companies. This section provides:
Notwithstanding any provisions of law to the contrary, each telecommunications company licensed or operating under this chapter, for any part of the preceding 6-month period, shall pay to the commission, within 30 days following the end of each 6-month period, a fee that may not exceed 0.25 percent annually of its gross operating revenues derived from intrastate business, except, for purposes of this section and the fee specified in s. 350.113(3), any amount paid to another telecommunications company for the use of any telecommunications network shall be deducted from the gross operating revenue for purposes of computing the fee due.
§ 364.336, Fla. Stat. (2001).
Level 3 advances several arguments in support of its assertion that its collocation activities are not intrastate business. First, Level 3 argues that its collocation product is predominantly interstate, as opposed to intrastate.[4] It asserts that its *452 collocation product is akin to a real property transaction. Level 3 claims that most of the equipment placed in its gateway facilities are used for the provision of internet-related service; however, Level 3 concedes that it does not know if all the space that it is leasing is used for internet purposes. In its petition for declaratory statement, Level 3 notes, "It would be extremely difficult to determine whether the collocation space that is leased is ultimately being used to provide regulated or unregulated services." Because Level 3 believes that most of the revenues generated by its collocation agreements result from providing support for internet services, the company argues that its revenues are "inherently interstate in nature."
However, Level 3's argument ignores the fact that sections 350.113(3)(b) and 364.336 impose regulatory assessment fees on the gross operating revenue of its intrastate business, not the intrastate or interstate business of its customers. Recently, this Court struck down an order of the PSC which assessed regulatory fees on the revenues of a telecommunication company's affiliate. See Verizon Florida, Inc. v. Jacobs, 810 So.2d 906 (Fla.2002). We found that the PSC did not have authority under section 364.336 to impute the affiliate company's revenues to Verizon. Id. at 909. This Court reasoned:
The pertinent language of section 364.336 is plain when it states that telecommunications companies, operating under chapter 364, are only required to pay regulatory assessment fees based on a percentage of their own gross operating revenues derived from intrastate business. In its order, the Commission imputes Directories' revenues to Verizon for purposes of regulatory assessment fee calculation. Yet, nothing in the plain language of section 364.336 serves as a basis for allowing the Commission to impute revenues to Verizon in the regulatory assessment fee calculus.
Id. at 908-09. Thus, even if Level 3's facilities are used by other companies for internet services, the PSC has the authority to assess Level 3's revenues from the rental of collocation space, because the rental involves an intrastate transaction. In the order, the PSC states:
But for the access to communications networks and facilities, providers would not collocate in Level 3's Gateways facilities, and Level 3 would not receive revenue from the lease of those facilities. Section 364.02(13), Florida Statutes, provides that a telecommunications facility "includes real estate, easements, apparatus, property, and routes used and operated to provide two-way telecommunications service to the public for hire within this state."
Collocation revenue is rent revenue from the lease of telecommunications facilities, like revenue from the lease of space on telephone poles and in telecommunications vaults and conduits. Rent revenue has traditionally been included in telephone company assessment fee calculations, and the statutes do not provide for any different treatment here.
*453 This Court is not at liberty to disregard the PSC's findings if they are supported by competent, substantial evidence. See DeGroot v. Sheffield, 95 So.2d 912, 916 (Fla.1957).
Second, Level 3 argues that collocation is not subject to regulation by the PSC because it does not involve the provision of basic local telecommunications service. Essentially, Level 3 has interpreted the assessment fee statutes as imposing an assessment on a telecommunications company based upon the type of intrastate business the company is providing. Section 350.113(3)(b) reads: "For each telephone company licensed or operating under chapter 364, one-eighth of 1 percent of its gross operating revenues derived from intrastate business." Section 364.336, Florida Statutes, states in pertinent part: "Notwithstanding any provisions of the law to the contrary, each telecommunications company licensed or operating under this chapter ... shall pay to the commission... a fee that may not exceed 0.25 percent annually of its gross operating revenues derived from intrastate business." (Emphasis added.) Nothing in the plain language of section 364.336 exempts a telecommunications company from paying regulatory assessment fees on collocation revenues derived from intrastate business. The statute on its face does not limit the assessment based upon the type of service that telecommunications business is providing.
Alternatively, Level 3 contends that its collocation revenues are not subject to assessment fees due to Level 3's status as an ALEC. Level 3 argues that because the collocation agreements of ALECs are not required and unregulated by the PSC, the revenues from their collocation agreements are not subject to assessment fees. Level 3 opines that because regulatory fees are required to be directly related to actual costs of the regulatory process, the PSC cannot justify its assessment against Level 3's collocation revenues.
Level 3 cites section 364.337 for support of its argument. This statute, which pertains to ALECs, provides in pertinent part:
(2) Rules adopted by the commission governing the provision of alternative local exchange telecommunications service shall be consistent with s. 364.01....
. . . .
(5) The commission shall have continuing regulatory oversight over the provision of basic local exchange telecommunications service provided by a certificated alternative local exchange telecommunications company or a certificated alternative access vendor for purposes of establishing reasonable service quality criteria, assuring resolution of service complaints, and ensuring the fair treatment of all telecommunications providers in the telecommunications marketplace.
§ 364.337, Fla. Stat. (2001). Level 3 argues that subsection (5) details the entire scope of the PSC's authority over ALECs, and because subsection (5) does not mention collocation, the PSC has no right to assess fees on an unregulated service that is not required. Level 3 further argues that ALECs are free to engage in any lawful unregulated intrastate or interstate business free from regulatory oversight.
A similar type of argument was advanced in General Telephone Co. of Florida v. Marks, 500 So.2d 142 (Fla.1986). In Marks the petitioner argued that the PSC was prohibited from including certain expenses in calculating the company's profits because the statute did not specially authorize the PSC to include the expenses in calculating the gross profit. This Court disagreed:

*454 The legislature cannot be expected to foresee and make provision for every possible type of expense that might be associated with the gross profit of a particular type of operation. Some discretion must be given to regulatory bodies to promulgate the detailed rules that expand upon and implement legislative directives. In this case the legislature provided that the commission shall calculate gross profits. Unless there is something else directly contrary in the statute itself, we must assume the legislature intended to grant to the commission the discretion to determine what factors should be used in calculating gross profits....
Id. at 145. Since nothing in the statute expressly prohibited the inclusion of white page expenses in the calculating of gross profits, the Court affirmed the PSC's order. We agree with this reasoning. In the instant case, nothing in sections 350.113 or 364.336 prohibits the PSC from including Level 3's collocation revenue for purposes of calculating gross profits.
Section 350.113(3) gives the PSC the authority to assess a fee "upon the gross operating revenues .... The fees shall, to the extent practicable, be related to the cost of regulating such type of regulated company...." The language in the statute does not appear to tie the assessment of regulatory fees to a specific service. Level 3's argument that the PSC has limited authority over ALECs ignores the numerous statutes which give the PSC authority over a variety of activities of all local telecommunications providers. For example, section 364.01(4) gives the PSC broad regulatory powers over the telecommunications industry. See § 364.01(4), Fla. Stat. (2001). Section 364.12 gives the PSC authority over the interconnection duties of both ILECs and ALECs. See § 364.12(2)-(5), Fla. Stat. (2001). The breadth of the PSC's authority supports the argument that the assessment fee is assessed to cover the entire spectrum of its regulatory activities.
Finally, Level 3 argues that the PSC's decision violates equal protection because it forces Level 3 to pay regulatory assessment fees on revenues generated in the same manner as those of its competitors that do not have to pay an assessment fee. The constitutional right to equal protection mandates that similarly situated persons be treated alike. See Duncan v. Moore, 754 So.2d 708, 712 (Fla.2000). Equal protection is not violated simply because persons are treated differently. When considering a statute that abridges a fundamental right, courts are required to apply the strict scrutiny standard to determine whether the statute denies equal protection. See Lite v. State, 617 So.2d 1058, 1061 n. 2 (Fla.1993). However, where a fundamental right is not at stake, the courts apply the rational basis test. "Under the rational basis standard, the party challenging the statute bears the burden of showing that the statutory classification does not bear a rational relationship to a legitimate state purpose." Id.
Level 3 argues that the extension of the PSC's authority to cover the company's nonregulated revenues unduly discriminates against collocation companies that are ALECs. However, Level 3 is not similarly situated to companies that solely engage in the rental of collocation facilities. Under section 364.02(12)(a)-(f), a company that only provides facilities to other telecommunications providers is not considered a telecommunications company. Since Level 3 is not in the same class as those companies, because it provides facilities and telecommunications services, it has failed to show that it has been denied equal protection.
*455 Accordingly, we affirm the PSC's order determining that Level 3's collocation revenues are subject to regulatory assessment fees.
It is so ordered.
ANSTEAD, C.J., WELLS and PARIENTE, JJ., and SHAW and HARDING, Senior Justices, concur.
LEWIS, J., concurs in result only.
NOTES
[1] Level 3 is a certified alternative local exchange and interexchange telecommunications service provider in Florida. An alternative local exchange telecommunications company (ALEC) is defined as any company certified by the Public Service Commission to provide local exchange telecommunications in Florida on or after July 1, 1995. See § 364.02(1), Fla. Stat. (2001). The federal Telecommunications Act of 1996 required incumbent local exchange carriers (ILECs) to allow ALECs to interconnect their networks with the networks of the new ALECs who sought entry into a particular market. See 47 U.S.C. § 251(c)(2)(2000). ILEC is defined by Florida law as a company certified by the PSC to provide local exchange service on or before June 30, 1995, see section 364.02(6), Florida Statutes (2001), and by federal law as a local exchange carrier that provided telephone exchange service in a particular area on February 8, 1996. See 47 U.S.C. § 251(h).
[2] As part of an ILEC's interconnection duties, the companies are required to allow ALECs to physically collocate their equipment on the ILEC's premises. The federal statute describes the collocation duty as follows: "The duty to provide, on rates, terms, and conditions that are just, reasonable, and nondiscriminatory, for physical collocation of equipment necessary for interconnection or access to unbundled network elements at the premises of the local exchange carrier, except that the carrier may provide for virtual collocation if the local exchange carrier demonstrates to the State commission that physical collocation is not practical for technical reasons or because of space limitations." 47 U.S.C. § 251(c)(6).
[3] Level 3's gateway facilities provide locations where customers can physically collocate their equipment in order to connect directly to Level 3's and other service providers' networks.
[4] The term "intrastate business" is not defined in chapter 364, Florida Statutes (2001). Under Florida's rules of statutory construction, the term "intrastate business" must be given its plain and ordinary meaning. See Rollins v. Pizzarelli, 761 So.2d 294, 298 (Fla. 2000). The Court has noted: "When necessary, the plain and ordinary meaning `can be ascertained by reference to a dictionary.' Further, it is a well-settled rule of statutory construction that in the absence of a statutory definition, courts can resort to definitions of the same term found in case law." Id. (citation omitted). Section 207.002, which deals with taxation on the operation of motor vehicles, defines intrastate as follows: "`Intrastate' means vehicle movement from one point within a state to another point within the same state." § 207.002(14), Fla. Stat. (2001). Black's Law Dictionary does not define intrastate business, but gives the following definition for intrastate commerce:

"Commerce that begins and ends entirely within the borders of a single state." Blacks Law Dictionary 262 (7th ed.1999). Webster's defines intrastate as "existing or occurring within a state." Merriam-Webster's Dictionary 614 (10th ed.1998). Thus, it appears that intrastate business is defined as business occurring within the state of Florida.