708 So.2d 594 (1998)
BELLSOUTH TELECOMMUNICATIONS, INC., Appellant,
v.
Julia L. JOHNSON, etc., et al., Appellee.
No. 90671.
Supreme Court of Florida.
April 9, 1998.
William W. Deem, Robert G. Beatty, Nancy B. White and J. Phillip Carver of Mahoney, Adams and Criser, P.A., Jacksonville, for Appellant.
John P. Fons and John Beranek of Ausley and McMullen, Tallahassee, and Charles L. Rehwinkle, Tallahassee, on behalf of Sprint Florida, Incorporated, Intervenor/Appellant.
Robert D. Vandiver, General Counsel and Richard C. Bellak, Associate General Counsel, Florida Public Service Commission, Tallahassee, for Appellee.
HARDING, Justice.
This cause is before us on a direct appeal brought by BellSouth Telecommunications, Inc. (BellSouth) to review Order No. PSC-97-0488-FOF-TL of the Public Service Commission (Commission). The order at issue denied BellSouth's request to reclassify the Jensen Beach, West Palm Beach, and Holley-Navarre exchanges into higher rate groups. Sprint/United Centel (Sprint) has also intervened in this proceeding. We have jurisdiction pursuant to article V, section 3(b)(2) of the Florida Constitution and section 364.381, Florida Statutes (1995). For the reasons expressed below, we affirm the Commission's order.
The facts of this case are as follows. Section 364.051, Florida Statutes (1995), provides that local exchange companies may elect price regulation effective January 1, 1996. The statute further states in relevant part:
(2) BASIC LOCAL TELECOMMUNICATIONS SERVICE.Price regulation of basic local telecommunications service shall consist of the following:
(a) Effective January 1, 1996, the rates for basic local telecommunications service of each company subject to this section shall be capped at the rates in effect on July 1, 1995, and such rates shall not be increased prior to January 1, 1999. However, *595 the basic local telecommunications service rates of a local exchange telecommunications company with more than 3 million basic local telecommunications service access lines in service on July 1, 1995, shall not be increased prior to January 1, 2001.
(b) Upon the date of filing its election with the commission, the rates for basic local telecommunications service of a company that elects to become subject to this section shall be capped at the rates in effect on that date and shall remain capped as stated in paragraph (a).
§ 364.051, Fla. Stat. (1995). On November 1, 1995, BellSouth filed written notification with the Commission of its election of price regulation pursuant to section 364.051. BellSouth's election was to be effective January 1, 1996. Prior to January 1, 1996 (but after July 1, 1995),[1] BellSouth filed tariffs to reclassify the rates for the Jensen Beach, West Palm Beach, and Holley-Navarre exchanges (rate regroupings). The rate regroupings reclassified these exchanges from one standard rate group to another,[2] but did not cause any standard rate to increase or decrease. The rate regroupings reflected changes to the nature of local service within these exchanges, i.e., growththe expanded scope of local calling caused by an increase in the number of access lines within the exchanges. The rate regroupings were to be effective October 20, October 22, and November 28, 1995, respectively.
On January 10, 1996, the Commission issued its "Order Acknowledging Election of Price Regulation and Notice of Proposed Agency Action Order Requiring Reduction of Certain Rates." That order determined that the rate regroupings constituted "increases" in rates for basic local telecommunications service and certain protected non-basic service within the proscription of section 364.051. The Commission directed BellSouth to eliminate the rate increases that resulted from the rate regroupings.
On January 31, 1996, BellSouth filed its Petition on Proposed Agency Action, thereby challenging the Commission's proposed agency action with respect to the rate regroupings. On July 22, 1996, Sprint was given permission to intervene. On April 28, 1997, the Commission issued its "Order Denying Tariff Filing For Rate Regrouping," forcing BellSouth to reverse the rate regroupings. This order is now being appealed.
The issue presented in this case is whether or not rate regrouping is permissible under the new price deregulation scheme. In essence, section 364.051 caps "rates" at their July 1, 1995, levels. The real question is whether the term "rates" applies to rate groups or individual customers.
BellSouth and Sprint both argue that the cap only applies to particular rate groups and therefore rate regroupings are not rate "increases" within the purview of section 364.051. BellSouth and Sprint contend that rate regrouping is an increase in the value of the service that a customer is receivingthe ability to access more callers within the local calling area.[3] Thus, it is BellSouth and Sprint's position that section 364.015 caps only the rates that apply to existing rate groups, not the rates that apply to individual *596 customers. In addition, BellSouth and Sprint argue that when the access lines within an exchange increase or decrease, Florida Administrative Code Rule 25-4.056[4] and sections 364.08(1),[5] 364.09,[6] and 364.10(1),[7] Florida Statutes, require the companies to reclassify the rates in order to avoid impermissible discrimination among similarly situated customers.
In response, the Commission reasons that the language of section 364.051 is clear and does not allow for any exceptions for rate regrouping. The Commission explains in Order No. PSC-97-0488-FOF-TL that rate regrouping is representative of the rate-ofreturn regulatory era, "created as a value-ofservice, revenue generating mechanism, where rates were not necessarily based on cost." The Commission further states that rule 25-4.056 was created to reflect the rateof-return philosophy. Finally, the Commission concludes that the circumstances that amounted to statutory discrimination (sections 364.08, 364.09, and 364.10) under the rate-of-return scheme do not amount to discrimination under the deregulation scheme. The Commission emphasizes that although customers in different exchanges may pay different rates, customers within the same exchange will all pay the same rate for the same calling privileges.
We begin our analysis by noting that "Commission orders come to this Court `clothed with a presumption of validity.'" Florida Interexchange Carriers Ass'n v. Clark, 678 So.2d 1267, 1270 (Fla.1996) (quoting City of Tallahassee v. Mann, 411 So.2d 162, 164 (Fla.1981)). Additionally, an agency's interpretation of a statute that it is charged with enforcing is entitled to great deference and will be approved by this Court unless it is clearly erroneous. Florida Interexchange Carriers Ass'n, 678 So.2d at 1270; Florida Cable Television Ass'n v. Deason, *597 635 So.2d 14, 15 (Fla.1994). The burden of overcoming these presumptions is on the party challenging the Commission's order, and it must be shown that there has been a departure from the essential requirements of the law. Florida Interexchange Carriers Ass'n, 678 So.2d at 1270; City of Tallahassee v. Mann, 411 So.2d at 164.
In the present case, the Commission interpreted rate regrouping as being a prohibited price increase under section 364.051. We do not find that this interpretation is clearly erroneous. The plain language of section 364.051 provides that "rates ... shall be capped"; the statute does not distinguish between "rates" as they apply to rate groups versus "rates" as they apply to individual customers. § 364.051(2)(a), Fla. Stat. (1995). Thus, the Commission could properly conclude that the statute caps all rates. Individual customers are required to pay increased rates when they are moved to a more densely populated rate group. Therefore, the Commission could also properly conclude that rate regrouping is prohibited by those companies that elect price regulation under section 364.051.
Accordingly, we affirm Order No. PSC-97-0488-FOF-TL.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] The record does not reflect the date or dates in which BellSouth applied for the rate regroupings; it only gives the effective dates of the changes. The record is clear that the requests were made after July 1, 1995. Presumably, the requests were made between July 1, 1995 and November 1, 1995the date BellSouth elected price regulation.
[2] BellSouth has different rate groups depending on the size of an area. For example, Rate Group 1 includes exchanges with from 1 to 2000 access lines, whereas Rate Group 10 includes exchanges with from 450,001 to 550,000 access lines. Thus, Rate Group 1 generally encompasses less populated areas, and Rate Group 10 generally encompasses more densely populated areas.
[3] To support this argument, BellSouth cites to In re Bell AtlanticPennsylvania Inc.'s Petition and Plan for Alternative Regulation under Chapter 30, 1995 WL 908609 at *7-9 (Pa.P.U.C. January 23, 1995), a recent opinion from the Pennsylvania Public Service Commission whereby the commission allowed for reclassification of exchanges into higher rate groups despite the existing rate freeze. The Pennsylvania Commission reasoned that customers received an increase in the value of the service being provided based on the increase in the number of lines available for a local calling area. Id.
[4] Rule 25-4.056 states:

(1) Whenever the number of access lines in the local calling area of an exchange increases or decreases to the extent that such exchange would fall into a different rate group, the company shall file a revised tariff with the Commission requesting authority to reclassify the exchange to its appropriate group. The effective date of the proposed rate change shall be the effective date of the next directory for the affected exchange or sixty days after the date of filing the tariff, whichever is later.
(2) The rate group in which an exchange falls shall be determined by the peak number of access lines in the exchange's local calling area since the effective date of the preceding directory.
(3) In each instance where the exchange reclassification is requested, the company shall provide adequate notice to the public in the exchanges involved. A bill stuffer, subject to Commission approval, shall be issued to each affected subscriber with the first bill following submittal of the application to the Commission. The bill stuffer shall provide notice of the reclassification sought, including the present and proposed rates. A second bill stuffer shall be provided with the first bill rendered following Commission approval, if approval is granted, stating the reclassification approved, including the approved rates.
Fla. Admin. Code R. 25-4.056.
[5] Section 364.08(1) states:

A telecommunications company may not charge, demand, collect, or receive for any service rendered or to be rendered any compensation other than the charge applicable to such service as specified in its schedule on file and in effect at that time. A telecommunications company may not refund or remit, directly or indirectly, any portion of the rate or charge so specified or extend to any person any advantage of contract or agreement or the benefit of any rule or regulation or any privilege or facility not regularly and uniformly extended to all persons under like circumstances for like or substantially similar service.
§ 364.08(1), Fla. Stat. (1995).
[6] Section 364.09 states:

A telecommunications company may not, directly or indirectly, or by any special rate, rebate, drawback, or other device or method, charge, demand, collect, or receive from any person a greater or lesser compensation for any service rendered or to be rendered with respect to communication by telephone or in connection therewith, except as authorized in this chapter, than it charges, demands, collects, or receives from any other person for doing a like and contemporaneous service with respect to communication by telephone under the same or substantially the same circumstances and conditions.
§ 364.09, Fla. Stat. (1995).
[7] Section 364.10(1) states:

(1) A telecommunications company may not make or give any undue or unreasonable preference or advantage to any person or locality or subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.
§ 364.10(1), Fla. Stat. (1995).