834 So.2d 855 (2002)
BELLSOUTH TELECOMMUNICATIONS, INC., Appellant,
v.
E. Leon JACOBS, Jr., et al., Appellees.
No. SC01-2205.
Supreme Court of Florida.
October 31, 2002.
Rehearing Denied December 27, 2002.
*856 Stephen H. Grimes of Holland & Knight LLP, Tallahassee, FL; and Adorno & Yoss, P.A., Miami, FL, for Appellant.
Harold McLean, General Counsel, and Richard C. Bellak, Associate General Counsel, on behalf of Florida Public Service Commission, Tallahassee, FL; and Jack Shreve, Public Counsel, and Robert D. Vandiver, Associate Public Counsel and Stephen M. Presnell, Associate Public Counsel, Tallahassee, FL, on behalf of Citizens of the State of Florida, Appellees.
LEWIS, J.
We have on appeal a decision of the Florida Public Service Commission relating to the rates of a telephone utility. We have jurisdiction under article V, section 3(b)(2) of the Florida Constitution.

Facts and Procedural History
In 1986, BellSouth Telecommunications (BellSouth, or the Company) instituted a 1.50% charge on all balances in excess of $1.00 that consumers failed to pay before the passing of certain due dates set by the Company, commonly referred to as a late payment charge. This charge was approved by the Public Service Commission (PSC, or the Commission) in all respects. On January 1, 1996, BellSouth became a price-regulated local exchange company subject to the restrictions contained in chapter 364 of the Florida Statutes. On July 9, 1999, the Company filed a tariff with the PSC in which it restructured the late payment charge, which had been submitted in 1986. Under this filing, BellSouth would apply a charge of $1.50 for residential customers and $9.00 for business customers, plus an interest charge of 1.50% on unpaid balances in excess of $6.00.
Because BellSouth is a price-regulated local exchange company, its tariff filing was treated as presumptively valid, and it properly became effective on July 24, 1999, fifteen days after being filed. See § 364.051(5)(a), Fla. Stat. (2001). The tariff provisions themselves began affecting Florida telecommunications consumers on August 28, 1999. On June 19, 2000, the PSC opened a docket entry to investigate whether BellSouth's revised payment structure violated the price increase limitation contained in section 364.051 of the *857 Florida Statutes. Subsequently, in Order No. PSC-00-1357-PAA-TL, the Commission issued a proposed action finding the 1999 tariff filing in violation of section 364.051(5)(a), Florida Statutes. In a timely protest of the proposed action, BellSouth petitioned the PSC for a formal hearing on the matter. Subsequently, BellSouth and the Office of Public Counsel jointly requested that the Commission resolve the dispute without a hearing. Therefore, the PSC canceled the hearing and directed the parties to file briefs.
On August 30, 2001, the PSC delivered its final order. See Final Order BellSouth Late Payment Charge Tariff Filing, Docket No. 000733-TL; Order No. PSC-01-1769-FOF-TL, 2001 WL 1085172 (Aug. 30, 2001). The Commission held that the late payment charge is properly characterized as a "service" under chapter 364, and that it is not a "new" service exempt from the price cap provisions of section 364.051(5)(a) for the first twelve months the service is offered. Based upon its conclusion that the restructured charge belonged in the miscellaneous nonbasic services category tariff basket, the Commission then calculated the impact of the charge upon that category of BellSouth's revenue. The restructuring resulted in a projected increase in revenue allotted to this basket from $44,808,752 to $70,687,801a 57.75% increase. The Commission deemed this percentage increase "clearly in violation of section 364.051(5)(a)."
This appeal followed.

Analysis
It is well established that "orders of the Commission come before this Court clothed with the statutory presumption that they have been made within the Commission's jurisdiction and powers, and that they are reasonable and just and such as ought to have been made." GTC, Inc. v. Garcia, 791 So.2d 452, 456 (Fla.2000) (quoting United Tel. Co. v. Public Serv. Comm'n, 496 So.2d 116, 118 (Fla.1986)); see also BellSouth Telecomms., Inc. v. Johnson, 708 So.2d 594, 596 (Fla.1998); Florida Interexchange Carriers Ass'n v. Clark, 678 So.2d 1267, 1270 (Fla.1996); Gen. Tel. Co. of Fla. v. Carter, 115 So.2d 554, 556-57 (Fla.1959). Therefore, unless the Commission exceeds its statutory authority, its determinations are accorded substantial deference by this Court. See GTC, 791 So.2d at 457.
Additionally, the PSC's "interpretation of a statute it is charged with enforcing is entitled to great deference and will be approved by this Court if it is not clearly erroneous." Florida Interexchange Carriers, 678 So.2d at 1270; see also GTC, 791 So.2d at 459; BellSouth Telecomms., 708 So.2d at 596-97. The party challenging the Commission's order bears the burden of overcoming the presumptions by showing a departure from the essential requirements of law. See GTC, 791 So.2d at 459; BellSouth Telecomms., 708 So.2d at 596-97; Florida Interexchange Carriers, 678 So.2d at 1270. Thus, we review the decision of the PSC with considerable deference to its conclusions.
Chapter 364, Florida Statutes, creates a price regulation scheme for all "local exchange telecommunications companies." See § 364.051(1), Fla. Stat. (2001). There is no dispute that BellSouth, by virtue of being a "company certified by the commission to provide local exchange telecommunications service in this state on or before June 30, 1995," § 364.02(6), Fla. Stat. (2001), is subject to the regulatory strictures of chapter 364. Therefore, under section 364.051(5)(a), BellSouth is authorized to set or change the rate for each of its nonbasic services, "except that a price increase for any nonbasic service category *858 shall not exceed 6 percent within a 12-month period." Id.
Because the statutory construct is so clear, it is plain that if a BellSouth charge or fee is deemed to be within a preexisting "nonbasic service category," any tariff filing with the Commission may not subject the Company's telecommunications customers to rate increases for such item greater than six percent in any one-year period. For this reason, an essential issue before this Court is whether the newly restructured late payment charge is within a "nonbasic service category." Section 364.02 offers the following definitions germane to the instant case:
(2) "Basic local telecommunications service" means voice-grade, flat-rate residential, and flat-rate single-line business local exchange services which provide a dial tone, local usage necessary to place unlimited calls within a local exchange area, dual tone multifrequency dialing, and access to the following: emergency services such as "911," all locally available interexchange companies, directory assistance, operator services, relay services, and an alphabetical directory listing....
....
(8) "Nonbasic service" means any telecommunications service provided by a local exchange telecommunications company other than a basic local telecommunications service, a local interconnection arrangement described in s. 364.16, or a network access service described in s. 364.163.
....
(11) "Service" is to be construed in its broadest and most inclusive sense.
§ 364.02, Fla. Stat. (2001). As is evident from these definitions, the Legislature drafted this statute in a fashion that makes the "nonbasic service" definition residual, and the statement of meaning of the term "service" extraordinarily sweeping.
BellSouth contends that this Court should refer to the standard definitions of the terms "telecommunications" and "service" to ascertain the proper label for its restructured late payment charge. Merriam-Webster's Collegiate Dictionary defines "telecommunication" as "communication at a distance (as by telephone)." Merriam-Webster's Collegiate Dictionary 1211 (10th ed.1999). Additionally, section 364.02 defines a "telecommunications company" as a business entity "offering two-way telecommunications service to the public for hire within this state by the use of a telecommunications facility," and a "telecommunications facility" as "real estate, easements, apparatus, property, and routes used and operated to provide two-way telecommunications service to the public for hire within this state." § 364.02(12)-(13), Fla. Stat. (2001). The applicable definition of "service," as provided by Merriam-Webster's Dictionary is: "a facility supplying some public demand." Merriam-Webster's Collegiate Dictionary 1070 (10th ed.1999).
Additionally, the Company contends that even if the late payment charge is properly denominated a nonbasic service, it is a new service and thus not subject to the limitations on fee increases contained in chapter 364. This argument is based upon the assertion that BellSouth's restructuring of its late payment charge in 1999 actually reflects the Company's lost value during the delinquency of late paymentsan item which has never been included in BellSouth's charges.
Consideration of the statutory language at issue, the plain meaning of the word "service," and simple logic compel the conclusion that BellSouth's late payment charge certainly may not be a "service" in the traditional sense of this word's meaning. *859 Indeed, historically, the fee charged by BellSouth does not, in actuality, reflect the provision of any additional service to its customers. Instead, it is simply a charge for the original service, increased to reflect the passage of time since payment was originally due to the Company. However, it has also been described as a charge for continuing service for delinquent accounts.
Although the late payment charge certainly may not logically fit neatly into the statutory construct of chapter 364,[1] we must consider the circumstances surrounding the Public Service Commission's determination in the instant case and the totality of the concepts historically utilized leading into price regulation. The record reflects that it has always been the practice of BellSouth to include fees such as the late payment charge that result from the provision of telecommunications services as "nonbasic services." Indeed, as determined by the PSC in its order below, BellSouth has represented since 1986 that its late payment charge belongs in the "miscellaneous basket category of the nonbasic services." See Final Order BellSouth Late Payment Charge Tariff Filing at 9, 2001 WL 1085172, *6. It is quite telling that from the time of legislative enactment of the current price regulation scheme to BellSouth's 1999 filing of the instant tariff, the Company's filings and communications with the PSC have always characterized the late payment charge as a "service" to be properly included in the nonbasic service category basket.[2] Certainly, once a tariff is filed by a carrier and accepted by the Commission, "it has the force and effect of law." Bella Boutique Corp. v. Venezolana Internacional de Aviacion, S.A., 459 So.2d 440, 441 (Fla. 3d DCA 1984). A validly filed tariff also "constitutes the contract of carriage between the parties." Id. Therefore, BellSouth's representations to the PSC regarding its tariff, while not tariff filings themselves, are indicative of a common practice within the telecommunications industry that serves to explain the PSC's determination that the newly revised late payment charge is properly classified as being within the "nonbasic service category" referred to in section 364.051(5)(a) of the Florida Statutes.
While the statute at issue in the instant case is not a paragon of clarity with regard to precisely describing operative service categories, it certainly is clear that the Legislature intended to draft the definition of "service" contained in section 364.02(11) extremely broadly and to apply section 364.051(5)(a) consistently with the practices historically utilized in the industry. When faced with a scenario in which BellSouth, by restructuring its late payment charge, sought to change well-settled industry practice regarding fees for the provision of telecommunications services and thereby avoid price-limiting regulation altogether, the PSC relied upon industry history in denoting the Company's late payment charge to be within the preexisting "nonbasic service category." Certainly, *860 we cannot deem the Commission's conclusions clearly erroneous. Indeed, based upon the facts before the PSC, its determination that "the interest charge is a `service' BellSouth renders its delinquent customers for carrying their unpaid balances," is quite logical. Logical application of the telecommunications regulatory structure as price regulation became operative and historical industry practice support the Commission's determinations. Therefore, BellSouth has not overcome the presumptions accorded to conclusions of the PSC, and we will not disturb the PSC's determination that the disputed late payment charge is properly labeled within the preexisting "nonbasic service category" subject to the limitations of section 354.051(5)(a) of the Florida Statutes. If this application is contrary to legislative design, it is a matter for legislative reconsideration, not judicial rewriting of the statutory framework.

Conclusion
Because BellSouth has not overcome the presumption of correctness accorded determinations of the Florida Public Service Commission, the Commission's findings and conclusions must stand. As the Company's proposed price increase is above the six percent annual limitation of section 364.051(5)(a), we affirm the Commission's final order.
It is so ordered.
ANSTEAD, C.J., and SHAW, WELLS, and PARIENTE, JJ., concur.
HARDING, Senior Justice, dissents with an opinion, in which QUINCE, J., concurs.
HARDING, Senior Justice, dissenting.
I respectfully dissent. I acknowledge that Public Service Commission (PSC) orders are accorded substantial deference by this Court. Nevertheless, I believe that the PSC's conclusion in this case was clearly erroneous. Although the term "service" in section 364.02, Florida Statutes (2001), is "to be construed in its broadest and most inclusive sense," it cannot be construed to include something that is clearly not a "service," i.e., a carrying charge. The majority acknowledges that a "late payment charge certainly may not logically fit neatly into the statutory construct of chapter 364." Majority op. at 859. Yet the majority defies logic and concludes otherwise. In the end, the majority is left to rely on "practices historically utilized in the industry." Majority op. at 859. By using industry practice to justify the PSC's conclusion, the majority adds a new dimension to the traditional rules of statutory construction, for which it cites no authority. For all of these reasons, I would reverse the decision of the PSC.
QUINCE, J., concurs.
NOTES
[1] Indeed, we have concerns over the interaction of the regulatory framework of chapter 364 and the complex, highly itemized nature of billing in the telecommunications industry today. The Legislature would be well advised to consider this issue to ensure that the original purposes of the law are properly pursued.
[2] The dissent fails to recognize that the statutory construction issue here revolves around whether the instant charge is properly included, as provided by statute, in the "nonbasic service category." See § 364.02(6), Fla. Stat. (2001). Both BellSouth and the PSC have always included this late payment charge in this statutory category and it certainly does not "defy logic" to conclude that the Commission may properly continue to rely upon this statutory practice and statutory construction.