SLEET, Judge.
Lutheran Services Florida,, Inc. (LSF), is the court-appointed guardian for the person and property of the ward Larry Perón. Mr. Perón resides in a nursing home facility as a beneficiary of the Medicaid Institutional Care Program (ICP). As part of that program, Mr. Perón pays a portion of his income to the facility as his patient responsibility payment and Medicaid ICP pays the balance of the cost of his care. In this administrative appeal, LSF challenges the final order of the Department of Children and Families Office of Appeal Hearings affirming the Department’s denial of LSF’s. request to have a $200 monthly guardianship fee for LSF deducted from Mr. Peron’s income.[1] We affirm the hearing officer’s order because Florida law does not deem a fee paid to the guardian of an incapacitated ward to be a “medically necessary” expense for purposes of the state’s Medicaid program.
Since 2003, LSF has been the court-appointed professional guardian of the person and property of Mr. Perón. Mr. Pe-rón is not capable of participating in his medical care or providing consent for treatment. As the professional guardian, *288 LSP’s duties have included reviewing and monitoring Mr. Peron’s medical information, consulting with medical providers to provide consent for treatment, monitoring changes in Mr. Peron’s condition, and preparing annual reports regarding Mr. Peron’s medical, mental health, and rehabilitative needs.
Mr. Perón has been approved by the Department to receive Medicaid ICP benefits since 2008. Medicaid ICP is a program that provides coverage for. healthcare services to individuals who require institutional care in nursing facilities. The Department is the state entity that determines ICP eligibility. § 409.902, Fla. Stat. (2013). The Department conducts periodic reviews to determine Mr. Peron’s ongoing ICP eligibility.
In December 2012, LSF obtained from the circuit court an order authorizing the payment of a monthly $200 guardian fee to be deducted from Mr. Peron’s income and paid to LSF. At that time, Mr. Peron’s total income consisted of a $985 monthly Social Security benefit. The Department calculated Mr. Peron’s monthly personal needs allowance to be $35. Subtracting that amount from Mr. Peron’s total income left $950 remaining as his monthly patient responsibility payment to the nursing facility. However, LSF then petitioned the Department to deduct the monthly $200 guardian fee from Mr. Peron’s patient responsibility amount. The Department denied LSF’s petition, concluding that its guardianship services to Mr. Perón were not medically necessary pursuant to Florida law. LSF timely appealed that denial and requested a hearing with the Department’s Office of Appeal Hearings.
The Department conducted a hearing on September 17, 2013, at which both parties submitted testimony and documentary evidence. Mr. Peron’s attending physician, Dr. Ingrid Zumaran, testified that Mr. Pe-rón is not capable of participating in his medical care or consenting to medical treatment. She further testified that when a medical decision must be made, she is required to contact LSF to obtain consent. According to Dr. Zumaran, absent an emergency, she could not treat Mr. Perón without first obtaining LSF’s consent. When asked whether a guardian was medically necessary for Mr. Perón, Dr. Zumaran testified, “Yes, it’s medically necessary.”
The Department did not call any medical expert witnesses; rather it argued that a guardian fee is not a “medically necessary” expense pursuant to the definition of that term contained in section 409.9131(2)(b) and that therefore a guardian fee cannot be deducted from an individual’s income for purposes of determining his or her patient responsibility payment. The hearing officer agreed with the Department and issued a final order affirming the Department’s action. This appeal ensued.
“[I]f [an administrative] agency’s decision is not supported by substantial, competent evidence established in the record ..., it will be overturned. But an appellate court reviews the agency’s conclusions of law de novo.” Wise v. Dep’t of Mgmt. Servs., Div. of Ret., 930 So.2d 867, 870-71 (Fla. 2d DCA 2006) (citation omitted). An appellate court may set aside an agency action where the court finds that the agency erroneously interpreted a provision of law and a correct interpretation compels a particular result. Metro. Dade Cty. v. Dep’t of Envtl. Prot., 714 So.2d 512, 515 (Fla. 3d DCA 1998); see also § 120.68(7)(b), (d), Fla. Stat. (2013).
The issue before this court is whether a guardian fee for an incapacitated ward falls within Florida’s statutory definition of a medically necessary expense so as to be considered an allowable *289 deduction from an individual’s income for purposes of determining the individual’s patient responsibility payment under Medicaid. LSF argues that the hearing officer’s reading of the statute is too restrictive in that it ignores LSF’s witnesses who testified that having a guardian for Mr, Perón is a medically necessary expense. LSF contends that the services it provides to the incapacitated ward, including the provision of consent to medical treatment, fall within the broad definition of “medically necessary” that is set forth in section 409.9131(2)(b).
Because Medicaid is a joint federal and state program, our resolution of this issue must start with a review of the federal statutes implementing this program. Federal law provides for the establishment and funding of state plans for medical assistance, see 42 U.S.C. § 1396-1, and sets forth the requirements with which each state must comply if it elects to participate in the program, see 42 U.S.C. § 1396a. Specifically, 42 U.S.C. § 1396a(a)(17) provides that each state plan must
provide for flexibility in the application of such standards with respect to income by taking into account ... the costs (whether in the form of insurance premiums, payments made to the State under section 1396b(f)(2)(B) of this title, or otherwise and regardless of whether such costs are reimbursed under another public program of the State or political subdivision thereof) incurred for medical care or for any other type of remedial care recognized under State law.
(Emphasis added.) Additionally, 42 U.S.C. § 1396a(r)(l)(a) provides as follows:
For purposes of sections 1396a(a)(17) ... with respect to the posteligibility treatment of income of individuals who are institutionalized or receiving home or community-based services under such a waiver ... there shall be taken into account amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including — ©, medicare and other health insurance premiums, deductibles, or coinsurance, and; (ii) necessary medical or remedial care recognized under State law but not covered under the State plan under this subchapter, subject to reasonable limits the State may establish on the amount of these expenses.
(Emphasis added.)
The federal rules for posteligibility treatment of income of institutionalized individuals are found in 42 C.F.R. § 435.726. That section provides that a state “agency must reduce its payment to an institution, for services provided to [disabled individuals who are eligible for Medicaid] by the amount that remains. after deducting ... from the individual’s total income” certain specified amounts. 42 C.F.R. § 435.725(a), (b). The amount that remains after those deductions are made is the individual’s patient responsibility payment. Required deductions under this section include a personal needs allowance for the individual; the maintenance needs of the individual’s spouse; the- maintenance needs of the individual’s family; Medicare and other health insurance premiums, deductibles, or coinsurance charges; and medical or remedial care expenses not subject to third-party payment. 42 C.F.R. § 435.725(c). The statute defines this last category as including an individual’s “[n]ecessary medical or remedial care recognized under State law but not covered under the State’s Medicaid plan.” 42 C.F.R. § 435.725(c)(4)(ii).
Under Florida law, “in the pursuance of state implementation ... of federal programs, an agency is empowered to adopt rules substantively identical to regulations adopted pursuant to federal law.” *290 § 120.54(6). Florida Administrative Rule 65A-1.7141(l)(g) is substantively identical to 42 C.F.R. § 435.725(c)(4) and reads as follows:
Effective January 1, 2004, the department allows a deduction for the actual amount of health insurance premiums, deductibles, coinsurance charges and medical expenses, not subject to payment by a third party, incurred by a Medicaid recipient for programs involving post eligibility calculatiori' of a patient responsibility, as authorized by the Medicaid State Plan and in accordance with 42 C.F,R. 435.725.
1. The medical/remedial care service or item must meet all the following crite? ria:
a. Be recognized under state law;
b. Be medically necessary;
c. Not be. a Medicaid compensable expense; and
d. Not be covered by the facility or provider per diem.
(Emphasis added.)
Thus, rule 65A-1.7141(l)(g)(l) sets forth a four-prong test in determining whether a medical or remedial care service is deductible. In the instant case, the hearing officer concluded that LSF’s requested guardian fee satisfied the first, third, and fourth prongs of the test but failed to meet the second prong of the test because guardianship is not a medically necessary service under the statutory definition contained in section 409.9131(2)(b). That statute reads as follows: -
“Medical necessity” or “medically necessary” means any goods or services necessary to palliate the effects of a terminal condition or to prevent, diagnose, correct, cure, alleviate, or preclude deterioration of a condition that threatens life, causes pain or suffering, or results in illness or infirmity, which goods or services are provided in accordance with generally accepted standards of medical practice. For purposes of determining Medicaid reimbursement, the agency is the final arbiter of medical necessity. In making determinations of medical necessity, the agency must, to the maximum extent possible, use a physician in active practice, either employed by or under contract with the agency, of the same specialty or subspecialty as the physician under review. Such determination must be based upon the information available at the time the goods or services were provided.
We must agree with the hearing officer that under the plain language of the statute, the services provided by a guardian to an individual who has been adjudicated incapacitated are not included in the definition of “medically necessary.” See GTC, Inc. v. Edgar, 967 So.2d 781, 785 (Fla.2007) (“The plain meaning of the statute is always the starting point in statutory interpretation .... ‘[Wjhen the language of the statute is clear and unambiguous and conveys a clear and definite meaning ... the statute must be given its plain and obvious meaning.’ ” (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984))). The plain language of section 409.9131(2)(b) states that the service at issue must be “provided in accordance with generally accepted standards of medical practice ” and that it must be reviewed for medical necessity by “a physician in active practice ... of the same specialty or subspecialty as the physician under review.” (Emphasis added.) This language plainly contemplates that a medically necessary service is one that is (1) medical or remedial in nature and (2) provided by a physician,
Additionally, we must give great deference to “an agency’s interpretation of a statute that it is charged with enforcing.” See BellSouth Telecomm., Inc. v. Johnson, *291 708 So.2d 594, 596 (Fla.1998). This is true even when a varying interpretation of the statute could be considered. GTC, 967 So.2d at 785. And “[t]his [c]ourt will not depart from the contemporaneous construction of a statute by a state agency charged with its enforcement unless the construction is ‘clearly unauthorized or erroneous.’” Level 3 Commc’ns, LLC v. Jacobs, 841 So.2d 447, 450 (Fla.2003) (quoting P.W. Ventures, Inc. v. Nichols, 533 So.2d 281, 283 (Fla.1988)).
Here, the Department has interpreted the statute as allowing only deductions for medical or remedial care services rendered by a medical professional directly to the Medicaid recipient. This is not only consistent with our plain reading of the statute but also is consistent with the rules promulgated by the Agency for Health Care Administration (AHCA). See Fla. Admin. R. 59G-1.010 (166) (defining medically necessary to include services that are, among other things, “necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain”; “individualized, specific, and consistent with symptoms or confirmed diagnosis of the illness or injury under treatment, and not in excess of the patient’s needs”; and “consistent ivith generally accepted professional medical standards as determined by the Medicaid program ” (emphasis added)). Consequently, we cannot conclude that the Department’s interpretation of the plain language of the statute is “clearly unauthorized or erroneous.” See Level 3 Commc’ns, 841 So.2d at 450. Accordingly, we are constrained to affirm the hearing officer’s order upholding the Department’s denial of LSF’s request to have a monthly $200 guardian fee deducted from Mr. Peron’s income.[2]
But in doing so, we note that either intentionally or by simple legislative oversight, this current statutory scheme leaves a gap wherein a guardian of an incapacitated ward who provides the necessary consent for medically necessary treatment cannot be compensated for its services under the state’s Medicaid program. This is problematic because although these guardian services do not meet the statutory definition of medically necessary, they do meet the real world definition of medically necessary.
Pursuant to subsections 744.3215(2)(c) and (3)(c) and (f), Florida Statutes (2003), Mr. Peron’s right to consent to medical treatment and his right to apply for government benefits were removed and delegated to LSF. As such, LSF, as the court-appointed guardian, is the only individual or entity with the legal authority to provide the necessary consent to ensure that the ward is appropriately screened and approved for Medicaid benefits. In the absence of such legal authority and consent, the ward could not access Medicaid benefits and medical care. Furthermore, “a competent person has the constitutionally protected right to choose or reject medical treatment.” In re Guardianship of Browning, 568 So.2d 4, 12 (Fla.1990). But a person who has been adjudicated incapacitated under section 744.102(12), as Mr. Perón has, cannot receive medically necessary treatment without a guardian’s consent. Accordingly, court-appointed guardians are providing absolutely necessary services to their *292 wards and are doing so without compensation for their efforts. If this is not the outcome intended by the Florida Legislature — which has emphasized the significance and necessity of guardianship services to incapacitated wards and clearly set forth a guardian’s duties -in the Florida statutes — we would encourage the legislature to revisit these statutory definitions to address the compensation of guardianship services for incapacitated wards.[3]
Affirmed.
ALTENBERND and SALARIO, JJ., Concur.

. The parties and the hearing officer below frame the issue before us as whether a guardian fee may be deducted from an individual’s patient responsibility payment. However, the federal statute defines the patient’s responsibility payment as the "amount that remains after deducting ... from the individual's total income” certain specified amounts. See 42 C.F.R. 435.725(a). As such, we address in this appeal whether a guardian fee may properly be deducted from an individual’s total income for purposes of determining what remains as his or her patient responsibility payment.

. LSF sought the deduction of guardian fees from Mr. Peron's income only pursuant to 42 C.F.R. § 435.725(c)(4) ("[a]mounts for incurred expenses for medical or remedial care that are not subject to payment by a third party”). Accordingly, we do not address whether guardian fees qualify as any of the other ‘‘[rjequired deductions” enumerated in 42 C.F.R. § 435.725(c) or any of the ”[o]p-tional deductionfs]” listed in 42 C.F.R. § 435.725(d).

. We note that several other states have determined that guardianship fees are necessary medical expenses that may be deducted from Medicaid recipients’ incomes for purposes of determining the recipients’ patient paid amounts for Medicaid purposes. See 130 Mass.Code Regs. § 506.220(E)(2)(b), discussed in Rudow v. Comm’r of Div. of Med. Assistance, 429 Mass. 218, 707 N,E.2d 339 (1999); 39-3 R.I.Code § 0392.15.15; 1 Tex, Admin. Code, § 358,439; Wash. Admin. Code, §§ 388-79-010, -020, -050; see also Pa. Dep't of Pub. Welfare, Long-Term Care Handbook, § 468.31.