IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

GABRIELLE GOODWIN,

      Appellant,

v.

FLORIDA DEPARTMENT OF
CHILDREN AND FAMILIES
AND DONNA ANSLEY,

      Appellees.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D12-4430

Opinion filed April 4, 2016.

An appeal from State of Florida Department of Children and Families, Office of Appeal Hearings. Susan Dixon, Hearing Officer.

Christine Davis Graves, Robert W. Pass, Martha Harrell Chumbler of Carlton Fields Jorden Burt, P.A., Tallahassee, and Cyril V. Smith and William K. Meyer of Zuckerman Spaeder LLP, Washington, for Appellant.

Rebecca A. Kapusta, General Counsel, Herschel C. Minnis, Assistant General Counsel, Department of Children and Families, for Appellees.


OSTERHAUS, J.

      Gabrielle Goodwin appeals the co-payment calculation made by the Florida Department of Children and Families (DCF) related to her Medicaid-covered nursing home care. She claims that federal law required the agency to deduct all

unpaid nursing home bills she incurred before becoming Medicaid eligible from co-payment amounts she was responsible to pay after joining the program. A DCF hearing officer rejected her argument below. And we affirm because DCF reasonably interpreted and applied the Medicaid law upon which Ms. Goodwin bases her challenge.

I.

Ms. Goodwin entered a skilled nursing facility in Tallahassee after a serious accident injured her spinal cord. She applied for Institutional Care Program (ICP) benefits through Florida's Medicaid program to help cover her nursing home costs. She became eligible in March 2012, retroactive to December 2011.

The federal and state government jointly manage Florida's Medicaid program. See Title XIX of the Social Security Act ("The Act"), 42 U.S.C. § 1396a, et seq.; Harris v. McRae, 448 U.S. 297, 308 (1980); Lutheran Servs. Fla. Inc. v. Dep't of Children & Families, 2015 WL 7566262 (Fla. 2d DCA 2015). At the federal level, the Department of Health and Human Services' Centers for Medicare and Medicaid Services (CMS) oversees state Medicaid programs. In Florida, the Agency for Health Care Administration (AHCA) administers the Medicaid program, while DCF determines eligibility determinations and calculates participants' co-payment amounts. See § 409.902, Fla. Stat. (2011); Fla. Admin Code R. 65A-1.7141. The agencies set forth the operative terms of Florida's Medicaid program, its scope,

services, eligibility, and reimbursement policies, in a "State Plan" that CMS approves. 42 C.F.R. § 430.10 (2012).

Beneficiaries in Florida's ICP must contribute to the cost of their care by remitting a monthly co-pay, called a patient responsibility amount (PRA), based on their income. § 409.904(3), Fla. Stat. (2011). Federal Medicaid law instructs the states how to calculate PRAs. The formula begins with the beneficiary's income, but allows for certain deductions, including unpaid medical care expenses. See 42 U.S.C. § 1396a(r)(1)(A); 42 C.F.R. § 435.725(c)(4)(ii) (2012). See also Fla. Admin Code R. 65A-1.7141(1)(g). The program then covers the difference between a beneficiary's PRA and the facility's monthly charge. See § 409.905(8), Fla. Stat. (2011). The smaller the PRA, the greater a beneficiary's Medicaid benefit.

In this case, DCF calculated Ms. Goodwin's PRA at roughly $1000 a month, inclusive of deductions. Ms. Goodwin disputed the calculation. She argued that DCF should have deducted all of her unpaid, pre-eligibility nursing care expenses, lowering her PRA. She asked DCF to recalculate it, deducting approximately $70,000 of these expenses incurred from November 2010 to November 30, 2011. But DCF disagreed with her legal interpretation and refused to recalculate.

Ms. Goodwin appealed to DCF's Office of Appeal Hearings. She submitted a one-page memorandum arguing that § 1902(r)(1)(A) of the Social Security Act, 42 U.S.C. §1396a(r)(1)(A)(iii), required DCF to deduct her outstanding, uncovered

3

nursing home bills from her PRA. She also alleged that the State Plan didn't authorize DCF's methodology, and that it was "the [only] mechanism through which the State could place reasonable limits on the amount of expenses it deducted from the [PRA]." Both parties waived a hearing and the hearing officer issued a Final Order in August 2012. The Order concluded that the federal statute did not require DCF to deduct all of Ms. Goodwin's pre-eligibility nursing home expenses from her PRA because they were "Medicaid compensable" and "non-recurring" expenses.

Ms. Goodwin timely appealed the Final Order to this court in 2012. But then she quickly moved to stay her appeal two days after filing a class action lawsuit in circuit court. Her class action case raised the same claim and proposed a class of Medicaid recipients in nursing homes for whom DCF had not deducted unpaid, pre-eligibility medical expenses. DCF did not object to a stay, and our court granted it in October 2012.

The stay remained in place for two-and-a-half years until May 2015, when the circuit court denied Ms. Goodwin's second motion to certify the class.[1] DCF then moved to dismiss this appeal prior to briefing because Florida amended its Medicaid State Plan during the interim stay period to authorize DCF to deduct three months of pre-eligibility medical expenses from PRAs. And DCF subsequently recalculated

---

[1] An appeal of the circuit court's most recent order denying class certification has been decided concurrently with this case, see Goodwin v. DCF, et al., 1D15-2142, according to the parties' request that the cases travel together.

4

Ms. Goodwin's PRA with this deduction, which DCF claimed mooted the appeal. But Ms. Goodwin disagreed, insisting that the Medicaid law required DCF to deduct *all* of her medical expenses, or almost a full year of additional expenses. This court denied the motion to dismiss, and her appeal proceeded apace.

## II.

Ms. Goodwin argues that DCF's failure to deduct all of her pre-eligibility nursing home bills from her Medicaid co-payment violates federal law, 42 U.S.C. § 1396a(r)(1)(A). She also claims that the Final Order relied upon a non-applicable state regulation, Rule 65A-1.7141(1)(g)1 of the Florida Administrative Code, and that no administrative rule authorized DCF to limit her PRA deduction.

## A.

We review interpretations and conclusions of law de novo and findings of fact underlying agency action for competent, substantial evidence. See § 120.68(7)(b), Fla. Stat. (2003); Jacoby v. Fla. Bd. of Med., 917 So. 2d 358, 359 (Fla. 1st DCA 2005). Because this appeal involves DCF's interpretation of a Medicaid provision susceptible to more than one reading, we are mindful of our responsibility to "give great deference to 'an agency's interpretation of a statute that it is charged with enforcing.'" See Lutheran Servs. Fla. Inc. v. Dep't of Children & Families, 2015 WL 7566262 *4 (Fla. 2d DCA 2015) (citing BellSouth Telecomm., Inc. v. Johnson, 708 So. 2d 594, 596 (Fla. 1998)). And we "will not depart from the contemporaneous

5

construction of a statute by a state agency charged with its enforcement unless the construction is 'clearly unauthorized or erroneous.'" Id. (quoting Level 3 Commc'ns, LLC v. Jacobs, 841 So. 2d 447, 450 (Fla. 2003) and P.W. Ventures, Inc. v. Nichols, 533 So. 2d 281, 283 (Fla. 1988)).

B.

Federal and state Medicaid law establish mandatory PRA deductions. They include unpaid medical care expenses "not covered" under a state's Medicaid plan. The federal statute states:

> there shall be taken into account amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including—
>
> (i) medicare or other health insurance premiums, deductibles, or coinsurance, and;
>
> (ii) necessary medical or remedial care recognized under State law but not covered under the State plan under this subchapter, subject to reasonable limits the State may establish on the amount of these expenses.

42 U.S.C. § 1396a(r)(1)(A) (emphasis added). A federal regulation tracks the statute's requirement:

> **(c) *Required deductions.*** In reducing its payment to the institution, the agency must deduct the following amounts, in the following order, from the individual's total income,   *     *     *
>
> **(4) *Expenses not subject to third party payment.*** Amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including—   *     *     *

**(ii)** Necessary medical or remedial care recognized under State law but <u>not covered under the State's Medicaid plan</u>, subject to reasonable limits the agency may establish on amounts of these expenses.

42 C.F.R. § 435.725(c)(4)(ii) (2012) (emphasis added).

In Florida, DCF promulgated a regulation in 2005, in response to federal law, to address deductions:

medical expenses, not subject to payment by a third party, incurred by a Medicaid recipient for programs involving post eligibility calculation of a patient responsibility, as authorized by the Medicaid State Plan and in accordance with 42 CFR 435.725.

1. The medical/remedial care service or item must meet all the following criteria: . . .

c. <u>Not be a Medicaid compensable expense</u>.

Fla. Admin Code R. 65A-1.7141(1)(g) (emphasis added). Florida's State Plan, which CMS approved in 2004, likewise provided that cannot deduct services covered and paid by Medicaid.

The parties agree that DCF must deduct unpaid medical expenses, which are not "covered" by Florida's Medicaid program, from PRAs. But they vigorously disagree on the definition of Medicaid "covered" care (or Medicaid "compensable" care as used in Florida's regulation). Appellant defines "covered" care as that for which the ICP actually pays. She argues, as a result, that DCF must deduct all of her unpaid, pre-eligibility nursing home expenses because Medicaid did not pay for them. Her interpretation matches CMS's position in defending a federal lawsuit

7

against the State of Maryland. See Maryland Dep't of Health & Mental Hygiene v. Centers For Medicare & Medicaid Servs., 542 F.3d 424 (4th Cir. 2008). In that case, the Fourth Circuit deferred to CMS's view that Maryland must deduct unpaid, pre-eligibility nursing home costs because it was a "reasonable interpretation of Congress' intent in enacting § 42 U.S.C. 1396a(r)(1)(A)." Id. at 436.

DCF's defines "covered" care, on the other hand, as medical expenses included in Florida's ICP regardless of whether Medicaid pays them for a particular beneficiary. Florida's Medicaid program routinely includes and covers the nursing home care that Ms. Goodwin received before joining the ICP. Thus, DCF considers them Medicaid-covered expenses.

The Fourth Circuit in the Maryland case considered Maryland's, DCF-like interpretation of "covered" to be reasonable. And it ultimately deferred to CMS's interpretation over the DCF-like interpretation under agency deference principles, because it couldn't determine the statute's true meaning.

> We find that the phrase "not covered under the State plan" is susceptible to more precise definition and open to varying constructions. . . . Congress left an interpretive gap . . . Ultimately, we are not the arbiter of whether Maryland or CMS has correctly interpreted § 1396a(r)(1)(A).     *     *     *
>
> CMS has neither exceeded its administrative authority nor clearly erred in its judgment. Thus, even if we agreed that Maryland's SPA is more reasonable, CMS would still prevail because we must defer to its interpretation so long as it is reasonable.

Md. Dep't of Health & Mental Hygiene, 542 F.3d at 434, 436 (citations omitted).

Like the court in Maryland, we also think that the federal statute and regulation can be read in different ways. Both DCF and Appellant reasonably construe "covered," and we too must fall back on agency deference. Here, we defer to DCF's reasonable interpretation and enforcement practice because it is the enforcing agency. Its interpretation of Medicaid law prevails, irrespective of which interpretation we might prefer, because it is reasonable, and not clearly erroneous or contrary to law. See Level 3 Commc'ns, 841 So. 2d at 450; BellSouth Telecomm., Inc., 708 So. 2d at 596.

In ruling for DCF, we find no error in the administrative hearing officer's treatment of the Maryland case below. Appellant argues that CMS's litigation position in Maryland controls and binds DCF's interpretation of "covered" in this case. But Appellant didn't cite Maryland in the administrative appeal proceeding below. She argued only that the federal statute's bare language required DCF to recalculate her PRA. But she needed to argue below that Maryland controls DCF's interpretation before raising it here. See Verizon Bus. Network Servs., Inc. ex rel. MCI Commc'ns, Inc. v. Dep't of Corrs., 988 So. 2d 1148, 1150 (Fla. 1st DCA 2008) ("an issue will not be considered on appeal unless the precise legal argument forwarded in the appellate court was presented to the lower tribunal.").

What is more, putting preservation aside, Appellant has not explained why CMS's position in the Maryland litigation binds DCF's calculation methodology

9

here. Maryland involved another state's Medicaid program and non-parties to this case. Florida wasn't a party to that case, and CMS isn't a party here. Appellant has cited no federal law, regulation, guideline, or other source purporting to adopt CMS's Maryland litigation position in all states, or in Florida specifically. And we see no basis in Appellant's argument for equating CMS's litigation position in Maryland with an authority binding upon DCF. See, e.g., Heimmermann v. First Union Mortg. Corp., 305 F. 3d 1257, 1262 (11th Cir. 2002) (noting that litigation positions "are the kinds of informal policy positions that lack the force of law and are unentitled to Chevron deference") (citing United States v. Mead Corp., 533 U.S. 218, 234-35 (2001)); William Bros. v. Pate, 833 F.2d 261, 265 (11th Cir. 1987) ("[W]e do not agree that the [agency's] mere litigating position is due to be given deference.").

## B.

Appellant's other arguments raise state rule-based concerns. She claims that Rule 65A-1.7141(1)(g) of the Florida Administrative Code doesn't apply here, and that Florida had no rule authorizing DCF to limit PRA deductions when she became eligible for Medicaid. See 42 U.S.C. § 1396a(r)(1)(A) (allowing states to establish reasonable limits on the amount of deductible pre-existing medical expenses).

But once again, Appellant did not preserve the issue. "It is well-established that for an issue to be preserved for appeal, it must be raised in the administrative

proceeding." Dep't of Bus. & Prof'l Regulation, Const. Indus. Licensing Bd. v. Harden, 10 So. 3d 647, 649 (Fla. 1st DCA 2009). "[A] party cannot argue on appeal matters which were not properly excepted to or challenged in the administrative tribunal." Pullen v. State, 818 So. 2d 601, 602 (Fla. 1st DCA 2002). Appellant filed a one-page memorandum in the administrative appeal proceeding below challenging DCF's PRA calculation. But her challenge didn't address the applicability of Rule 65A-1.7141(1)(g). Even after DCF cited and relied upon this state rule to defend its PRA calculation methodology, Appellant met the argument below with silence. The Final Order, with no reason to doubt its relevancy, cited and relied upon it.

The rule appears plenty relevant on its face. DCF had promulgated it some six years before Appellant applied for Medicaid to address PRA calculations consistent with federal parameters. It broadly described how DCF should incorporate beneficiaries' pre-eligibility medical expenses into PRAs. And it tracked the federal statute's relevant language regarding deductions for non-compensable expenses: "[I]n accordance with 42 CFR 435.725 . . . [t]he medical/remedial care service or item must . . . [n]ot be a Medicaid compensable expense." Rule 65A-1.7141(1)(g), F.A.C.; see also 42 U.S.C. § 1396a(r)(1)(A) & 42 C.F.R. § 435.725(c)(4)(ii). For these reasons, we find no error in the Final Order relying upon Rule 65A-1.7141(1)(g).

11

## III.

We conclude that DCF need not deduct more from Appellant's PRA than the three months of pre-eligibility nursing home expenses that it has already deducted. The Final Order is AFFIRMED.

THOMAS and BILBREY, JJ., concur.